## LEWIS v. BARNHART.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 1211. Submitted November 3, 1891. — Decided April 25, 1892.[1]

In 1838 R. L., a resident of Ohio, received a patent from the United States
of public lands in Illinois. In 1842 he made his will in Ohio, where he
continued to reside until his death in 1843. After disposing of other
property he devised his Illinois lands and bequeathed the remainder of
his personal estate to his wife J. N. L. and to the heirs of her body, to be
equally divided between them, share and share alike, and he appointed
her sole executrix of the will. He left no issue surviving him, (although
he had had children,) but he left brothers and the issue of deceased
brothers. His will was duly proved in Ohio, and the widow, who elected
to take under it, qualified as executrix in 1843. In 1846 the Illinois lands
were sold for nonpayment of taxes assessed in 1845. The county records
show no judgment for the tax sale. The lands were purchased at the
tax sale by a brother-in-law of the widow, who assigned the certificate
to the widow, and the deed was made to her directly. She then, through
her attorney in fact, made sales of various tracts of this land, at various
times, until all were disposed of. The purchasers duly entered into pos-
session, and took title, and they and those claiming under them continued
in possession and paid all taxes on the lands occupied by them respectively
for periods ranging from 29 to 33 years. In 1853 a deed of a part of
the tract from the widow to one M. was put on record, in which it was
recited that the land conveyed by that deed had been held by R. L. and
had been devised by him. The county records also contained a copy of
the Book of Land Entries, furnished by the auditor to the county clerk
for the purpose of taxation: but, with these exceptions those records
contained nothing pointing to the patent to R. L., or to his will, or to
the interest devised by it to his widow, J. N. L., until 1866, when what
purported to be a copy of the will was filed in the office of the recorder
of the county. To this copy were attached copies of the affidavits of the
subscribing witnesses to the will in proof of its execution, and a certifi-
cate signed by the judge and by the clerk of the probate court in Ohio
that these were copies of the will and affidavits and order and proceedings
taken from the originals in that court; but there was no copy of the

---

[1] With this case were submitted at the same time, and on the same briefs,.
No. 1212, LEWIS v. PHILLIPS; No. 1213, LEWIS v. JOHNSON; No. 1214, LEWIS
v. DIRKS; No. 1215, LEWIS v. DYE; No. 1216, LEWIS v. BONER; and No.
1217, LEWIS v. BONER, all brought up by writs of error to the Circuit Court
of the United States for the Northern District of Illinois. The opinion of
the court is entitled in all the cases.

order and of the proceedings admitting the will to probate. The widow died in 1888, not having married again, and leaving no issue. Up to that time no one of the several purchasers, nor any one claiming under them had actual notice that R. L. had been seized of these lands through a patent from the United States, or of his will, or of its provisions, nor any constructive notice thereof other than is to be implied from the public records of the United States and of the county. On the death of the widow the direct descendants of the brothers of R. L., being his only heirs at law, brought these actions of ejectment against the several persons occupying and claiming title to said several tracts of land, to recover possession of the same, maintaining that the tenancy of the widow and of all claiming under her was a life estate for the term of her life, and that the statute of limitations did not begin to run against the remaindermen until the expiration of the life estate. *Held*,

(1) That the sheriff's deed for the land sold for taxes, being regular on its face, and purporting to convey the title to the land described in it, was sufficient color of title to meet the requirements of the statute of limitations of the State of Illinois, without proof of a judgment for the taxes;

2) That the book of land-entries in the county clerk's office furnished by the auditor to the county clerk for the purposes of taxation was not constructive notice of the issue of the patent for the public lands to R. L.;

(3) That the will of R. L. was not authenticated and certified by the officers of the probate court in Ohio in a manner to entitle it to record under the statutes of Illinois; and that the record of it there, without proper proof of its probate in Ohio, was not constructive notice of it and of its contents;

(4) That the recital in the deed from J. N. L. to M. in 1853 was at most notice of the facts recited in it to the grantee and those claiming under him;

(5) That, by the law of Illinois, the actual possession of the several defendants, for more than seven successive years prior to the commencement of these actions, of the lands in controversy, under claim and color of title made in good faith, that is, under deeds purporting to convey the title to them in fee, and the payment of all taxes legally assessed on them, without notice, actual or constructive, during that period, of any title to or interest in the lands upon the part of others that was inconsistent with an absolute fee in their immediate grantors, and in those under whom such grantors claimed, entitled them to be adjudged the legal owners of such lands according to their respective paper titles, even as against those, if any, who may have been entitled by the will of R. L. to take the fee after the death of his widow without heirs of her body.

(6) That, in view of the foregoing, it was unnecessary to pass upon the nature of the estate devised to J. N. L.

EJECTMENT.   The court stated the case as follows:

These actions of ejectment were brought in the year 1889. The lands in controversy are parts of a larger tract of sixteen hundred acres in Woodford County, Illinois, entered by Romeo Lewis, in the year 1838 at the Land Office in Springfield, in that State, and of which .he was seized in fee, by a patent from the United States, at the date of his will, January 8, 1842, as well as when he died, at his residence in Oxford, Butler County, Ohio, on the·24th day of June, 1843.

The parties, in writing, waived a jury, and the cases were severally tried·by the court, which made a special finding of facts on which judgment was rendered for the respective defendants.   Each action was held to be barred by the statute of limitations of Illinois protecting the actual possession, continued for seven successive years, of land or tenements, under claim and color of title made in good faith, and accompanied by the payment, during that period, of all taxes legally assessed on them.   The principal contention of the plaintiffs in error, who were the plaintiffs below, upon this point, is, that limitation did not commence to run· against them until shortly before these actions were instituted, and, consequently, the statute has no application.

In case 1211, *Lewis* v. *Barnhart*, the facts upon which the judgment was based were, substantially, as follows·:

By his will, which was admitted to probate and recorded in the county of his residence in Ohio, the· testator directed .his interest in lands in the Territory of Florida, and in the States of Arkansas and Mississippi, to be sold, and the proceeds, together with moneys that might be derived from other sources, applied to the payment of his just debts.   After making certain bequests of money to his mother, nieces, and others, the will proceeds: " I further give and devise to my dearly beloved wife, Jane N. Lewis, and to the heirs of her body, my houses and lots in the town of Oxford, Butler County, Ohio, and all the residue of my lands in the States of Indiana and Illinois, and all the rest, residue, and remainder of my personal estate, goods and chattels of every kind· and ·description whatsoever

to be equally divided between them, to share and share alike. And lastly, I hereby appoint my said beloved wife, Jane N. Lewis, sole executrix of this my last will and testament, hereby revoking all my former wills by me made. And I do hereby ratify and confirm this and no other to be my last will and testament."

The testator left no issue surviving him. Three children died prior to the date of the will. The fourth, born April 15, 1843, lived only a few days. He had no sisters. But he had four brothers, three of whom died before he did, while the fourth survived him. His wife was only thirty-four years old at the date of the will. She remained a widow, and died in July, 1888, aged eighty years, leaving no issue.

The plaintiffs are the direct descendants of the testator's brothers, and his only heirs at law.

The widow qualified, in the proper court of Ohio, as executrix, and, in open court, September 25, 1843, elected to take under the will.

The lands in controversy were assessed for taxation in Woodford County for the years 1844 and 1845 in the name of Romeo Lewis as patentee and owner. They were then "wild lands," uncultivated, of little value, and in a new and sparsely settled country. On the 13th of October, 1846, they were sold for the taxes of 1845, Guernsey Y. Roots, the husband of a sister of Jane N. Lewis, becoming the purchaser. He knew, at the time, of the existence and probate of the will of Romeo Lewis, as well as of the appointment of Jane N. Lewis as executrix, and of her election to take under the will. But the relationship of Roots to Mrs. Lewis was not known to the defendants or to any one under whom they claim.

The records of the Circuit Court and recorder's office in Woodford County as they existed at the time of the trial, did not show any judgment entered against the lands for the taxes of 1845. Nevertheless, the sheriff, by deed of May 16, 1849, conveyed them to Jane N. Lewis, as assignee of Roots's certificate of purchase, the deed reciting that, "at the September term, 1846, of the Circuit Court of Woodford County, a judgment was obtained in favor of the State" for the taxes, inter-

est and costs assessed upon the lands for the year 1845, and that the sheriff, on the 13th of October, 1846, by virtue of a precipe issued September 20, 1846, exposed them for sale, in conformity with the requirements of the statute, "for the satisfaction of the judgment so rendered as aforesaid." This deed was duly acknowledged and recorded on the day it bears date.

By power of attorney given May 7, 1856, and duly recorded July 24, 1856, Harry Lewis, of Ohio, the surviving brother of the testator, was constituted by Mrs. Lewis her attorney to sell and convey in fee simple, by deed of general warranty, these and other lands in Woodford County, Illinois. In virtue of this power of attorney, Lewis executed to Absalum Doherty a bond, dated June 21, 1856, for a conveyance by deed of general warranty, the consideration recited being $5600, for which Doherty gave his note. This bond was recorded July 7, 1856. In that year Doherty went into possession and improved the lands, claiming them under the above contract and bond. Within two years after taking possession he enclosed them with fences, built two houses upon them, and put a large part of them in cultivation.

On the 15th day of August, 1866, what purports to be a copy of the will of Romeo Lewis was recorded in one of the books containing the record of deeds in the recorder's office of Woodford County.

Mrs. Lewis, in execution of the contract with Doherty, made to him, August 31, 1866, a warranty deed. He resided upon the lands continuously, until his death on the 15th of September, 1876. He left a widow and a son as his sole heir, who remained in possession until the 4th day of February, 1881, when they united in a conveyance to Lawrence Gasner. The latter held possession under that conveyance until November 1, 1881, when he conveyed by warranty deed to the defendant Gish, who has continued in possession under that deed. The defendant Barnhart is only a tenant of Gish.

In 1858 Doherty paid the taxes on the lands for the year 1857, and he and those claiming under him paid all the taxes assessed against them up to the commencement of this action.

It was stipulated between the parties, and the court found, that neither the defendant Gish, nor his grantor, nor any one under whom he claims, (except Jane N. Lewis,) had, prior to September 1, 1889, any notice that Romeo Lewis was seized of these lands, at the time of his death, by patent from the United States, other than such as may have been conveyed, constructively, at the date of the above bond and deeds, by the Book of Land Entries in the office of the county clerk of Woodford County, Illinois, furnished by the auditor to the county clerk for purposes of taxation; or by the fact that the lands were assessed for taxation in 1845 in the name of Romeo Lewis, and were sold for the nonpayment of taxes in 1846; or by the record of a deed from Jane N. Lewis to John G. Mohr, dated February 8, 1853, and recorded in that county, which described the land thereby conveyed (what particular lands the record does not show) as "said tract of land having been held by Romeo Lewis, the deceased husband of the grantor, and to her devised in the last will and testament of said Romeo Lewis." Nor did the defendant, or any of the persons through whom he claims title, (except Jane N. Lewis,) have any knowledge whatever of the existence or probate of the will of Romeo Lewis prior to the time when what purported to be a copy of it was recorded, as above stated, in Woodford County, unless notice was to be imputed to them by the record of the above deed from Jane N. Lewis to Mohr, or by the record and probate of the will in 1843 in Butler County, Ohio.

It was further stipulated and found that "the defendants have a complete chain of title, properly recorded at the date of said deeds or bonds for deeds, to the lands described in the declaration in this case, under deeds with full covenants of warranty, from Jane Lewis to themselves, which deeds were also properly recorded at the dates of the execution thereof, and that said lands have been actually occupied and resided upon by the defendants and their grantors from the date of the purchase thereof, as shown by said deeds from Jane N. Lewis, and that they have severally paid all taxes assessed on said lands from the date of said deeds to the present time."

The other cases named in the beginning of this opinion depend upon facts similar to those above set forth. The defendants, in each case, hold under bonds and deeds, or under deeds only, from Jane N. Lewis, which were duly recorded, and, prior to the commencement of these actions, they had been in actual possession, paying all taxes assessed on the lands occupied by them, respectively, for periods ranging from twenty-nine to thirty-three years.

*Mr. Sabin D. Puterbaugh, Mr. Thomas Millikin, Mr. Palmer W. Smith* and *Mr. Leslie D. Puterbaugh,* for plaintiffs in error, submitted on their brief. Touching the Illinois statutes of limitations, the only point considered in the opinion of this court, they said:

The defendants in error claim under the statute of limitations: *First,* — Under section 1, adverse title and possession, without notice, for over twenty years; *Second,* — Under section 6, claim and color of title, made in good faith, actual possession and payment of taxes for the period of seven years.

The plaintiffs in error claim that the statute of limitations cannot run as against them during the lifetime of Mrs. Lewis, because during that period they had no right of entry or action.

No disseisin of the tenant of a particular estate and occupation under it, however long continued, will affect the right of the reversioner. And the doctrine may be laid down as universal, that no possession can be held to be adverse as to one who has no right of entry and possession during its continuance. *Deryer* v. *Schaeffer,* 55 N. Y. 446. The latter may enter whenever the particular estate shall determine by its limitation. *Miller* v. *Ewing,* 6 Cush. 34; *Jackson* v. *Schoonmaker,* 4 Johns. 390; *Salmons* v. *Davis,* 29 Missouri, 176. The statute does not run against a reversioner till the death of the tenant for life, when the latter has conveyed the estate in fee, *Gernet* v. *Lynn,* 31 Penn. St. 94; *Melvin* v. *Merrimack Locks and Canals,* 16 Pick. 137; *S. C.* 17 Pick. 255; *Raymond* v. *Holden,* 2 Cush. 269. And where a husband and wife were disseized, and the disseisor held adverse possession

for the period of limitation, which possession would bar the right of the husband, if living, at his death, she, or her representatives might claim the land. *Gregg* v. *Tesson*, 1 Black, 150.

If the possession was taken under a title not originally hostile to the true owner it will be intended that his possession was not adverse. *Jackson* v. *Thomas*, 16 Johns. 293; *Smith* v. *Burtis*, 9 Johns. 174; *Jackson* v. *Johnson*, 5 Cowen, 74; *S. C.* 15 Am. Dec. 433. And the purchaser of an estate for life holds in subordination to the reversioner; and an adverse possession against the reversioner cannot be predicated on it. *Jackson* v. *Graham*, 3 Caines, 188; *Jackson* v. *Town*, 4 Cowen, 599; *S. C.* 15 Am. Dec. 405; *Jackson* v. *Parker*, 9 Cowen, 73. And this is the law although he supposed his deed gave him the fee. *Learned* v. *Tallmadge*, 26 Barb. 443; *Barrett* v. *Stradl*, 73 Wisconsin, 385. The statute of limitations does not run against reversioners. Angel on Limitations, Sec. 370.

The possession of a tenant for life is never deemed to be adverse to his reversioner. *Grout* v. *Townsend*, 2 Hill, 554; *Austin* v. *Stevens*, 24 Maine, 520; *Varney* v. *Stevens*, 22 Maine, 331. Nor if he be disseized are the rights of the reversioner thereby affected; and he may enter or sue in an action to recover possession within twenty years after the death of the tenant for life, without regard to the lapse of time during which the disseisor may have held the premises. *Jackson* v. *Mancius*, 2 Wend. 357; *McCorry* v. *King*, 3 Humph. (Tenn.) 267; *S. C.* 39 Am. Dec. 165; *Jackson* v. *Schoonmaker*, 4 Johns. 390; *Foster* v. *Marshall*, 2 Foster, 491; *Guion* v. *Anderson*, 8 Humph. (Tenn.) 325. And if one who enters upon land under an agreement with a tenant for life continues to hold possession after her death he becomes as to the reversioner a mere trespasser. *Williams* v. *Caston*, 1 Strobhart, 130.

It has been further held that if the tenant for life do any act with the property which works a forfeiture of the same it only affects his interest, but not that of the reversioner. *Archer* v. *Jones*, 26 Mississippi, 583, 589. So if the tenant does an act by which he incurs a forfeiture of the estate the reversioner is not bound to treat the estate as merged in his

own and enter immediately; he may have his action after the death of the tenant for life. without being affected by the previous possession. Nor can a tenant for life who creates an estate by grant or otherwise defeat his grant by surrender to his landlord or reversioner. *Moore* v. *Luce*, 29 Penn. St. 263; *S. C.* 72 Am. Dec. 629.

It is no matter how many estates are carved out of the owner's entire estate, a reversion will be left, provided these do not amount in quantity to his original estate. Thus the owner of a fee may grant twenty or more successive life estates and still retain his fee simple of the land, though his right of possession will be suspended till these life estates shall have been exhausted.

It was upon this principle that, after the statute *de donis*, there was always held to be a reversion in the grantor of an estate tail, upon the idea that the succession of life estates which the successive tenants in tail were to enjoy, might at some time cease, and no one have a right to claim the estate under the original limitation.

It is settled law in Illinois that the statute of limitations may run, and the bar become complete against an estate for life or for a term of years; but that in such cases when the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainder-man or reversioner, and then, and not till then, the statute begins to run against him, and he must have the same period within which to assert his title, as was had by the owner of the particular estate. *Higgins* v. *Crosby*, 40 Illinois, 260; *Steele* v. *Gelletly*, 41 Illinois, 39; *Dugan* v. *Follett*, 100 Illinois, 581; *Whiting* v. *Nicholl*, 46 Illinois, 230; *S. C.* 92 Am. Dec. 248; *Rohn* v. *Harris*, 130 Illinois, 525; *Mettler* v. *Miller*, 129 Illinois, 630.

The statute would work great injustice if it were held to affect the rights of reversioners or remainder-men during the continuance of the particular estate or the estate for life. To so hold would in effect deprive the reversioner or remainder-man of his rights without ever having a day in court. And if the statute of Illinois relating to limitations should bear this construction it would be transcending the power of the

legislature, and as to such reversioner or remainder-man would be unconstitutional and void.

The plaintiffs in error are guilty of no laches. They do not claim under the will of Romeo Lewis, but by descent as his heirs at law. Until Mrs. Lewis's death in 1888 without heirs of her body, it was not known and could not be known that the plaintiffs would have an interest in the property. As they do not claim under the will and had no vested interest until the death of Mrs. Lewis without issue, no duty devolved upon them to record the will in Woodford County or elsewhere, or to give notice to the defendants of their contingent expectations or to do any act to protect the land.

Until the rights of the plaintiffs vested, they had no power to appear in court to defend or protect the title, to make an entry or assert any rights with respect to the property, or to in any way stop the running of the statute of limitations. *Mettler* v. *Miller*, 129 Illinois, 630, 642.

We submit that up to the time of Mrs. Lewis's death, in 1888, the estate of the heirs at law of Romeo Lewis, deceased, was simply a possibility of reversion. See the distinction drawn in *Heath* v. *Barmore*, 50 N. Y. 302; *Nicoll* v. *Erie Railroad*, 2 Kernan, 121. In 4th Kent, 370, it is said that the grantor of an estate upon condition has only a possibility of reverter, and no reversion; and in the note to page 11, he says: There is only the possibility of a reverter left in the grantor, and not an actual estate. See *Martin* v. *Strachan*, 5 T. R. 107 n. For examples illustrating the distinctions between a naked possibility and a possibility coupled with interest, see *Jackson* v. *Waldron*, 13 Wend. 178.

Romeo Lewis devised his entire estate in fee tail to his wife, and until her death the heirs of the testator had simply a possibility of reverter but no vested estate. This being conceded, they had no more right to interpose by injunction or the appointment of a receiver than a son has with reference to his father's estate during the life of the father.

We further submit that Mrs. Lewis, at the dates of the bonds for deeds and conveyances from her under which the defendants respectively claim title, was clothed with no color of

title in fee by her tax deed of 1849.    Before she could be held and adjudged to be the legal owner of the lands under section 6 of the limitation laws it must appear that she was in the actual possession under claim and color of title, made in good faith; that she continued in such possession for the period of seven years, and during said time paid all taxes on such lands.    She had a bare tax deed, without any judgment to support it.    Her pretended color of title was not made in good faith, but was fraudulently procured to defeat the heirs of her deceased husband, who in the future might possibly become reversioners.    It is not shown or admitted that she ever paid any taxes except in 1846, and then only by purchasing at the tax sale.    The lands being wild and uncultivated, she was never in the actual possession.    Every element required to entitle her to be held and adjudged to be the legal owner of the lands is wanting in order to clothe her with color of title made in good faith.

The records of Woodford County were notice to the defendants that there was no judgment against the lands for taxes; and they were bound to know that the tax deed was void for want of a judgment to support it.    The lands being vacant, wild and uncultivated, with no person in the actual possession, the statute of limitations could not have run during the period of seven years prior to the purchases from Mrs. Lewis, and she was not clothed with color of title in fee by the tax deed of 1849.

The color of title under which the defendants claim is the conveyances from Mrs. Lewis, and these would be sufficient if the plaintiffs had been in a position where they could have asserted title; but the defendants could acquire no color of title or other rights during Mrs. Lewis's lifetime to the preju-dice of the plaintiffs as reversioners in expectancy.

The plaintiffs offered the will in evidence for the sole and limited purpose of showing that Mrs. Lewis had a life estate, and, therefore, could take nothing by her tax deed, and that limitation did not run against them.    They also showed that the persons who under the will were to take the remainder were not in existence, and that, therefore, for want of such

persons the estate at the death of Mrs. Lewis, in 1888, went to the plaintiffs by way of reversion.

The defendants, by acquiring title from Mrs. Lewis, obtained no greater interest than she possessed. They stand in her shoes; and neither they nor Mrs. Lewis could commit any act, or omit to perform any duty which would defeat the estate of remainder or reversion.

The defendants introduced the tax deed of Mrs. Lewis simply as a claim or color of title, in order to furnish a basis for occupancy, payment of taxes and thereby a title under the statute of limitations. This being the case, they would be required to show that the color of title is an honest one; and in addition thereto that it was in fact something more than the life estate of Mrs. Lewis. If she had only a life estate how could she convey to the defendants a greater estate? And the fact that she attempted to convey a greater estate by giving a warranty deed purporting to convey the fee does not in any manner affect the remainder-men or reversioners. This is expressly held in *Barrett* v. *Stradl*, 73 Wisconsin, 385, and cited and approved in *Mettler* v. *Miller*, 129 Illinois, 630.

The fact that the defendants and those under whom they claim may have believed that they were acquiring a good title is wholly immaterial. The plaintiffs in error, whose hands were tied, being unable to assert title during the life of Mrs. Lewis, are not responsible for or to be prejudiced by the mistakes or neglects of the life tenant or those claiming under her. During the existence of the life estate Mrs. Lewis and her grantees had a right to use the lands as they saw fit, and in doing so they in no manner interfered with or affected the rights of the plaintiffs in error, whose contingent interests could not become vested until the expiration of the life estate at the decease of Mrs. Lewis without issue of her body.

The possession of Mrs. Lewis, or of the defendants in error, her grantees, was never during her life hostile, but was exactly in accordance with the testator's will.

The defendants in error knew that the United States were the source of the title, and that a patent had issued to some one. They knew there was an outstanding title in some one,

and it was their duty to ascertain the name of the patentee, or the holder of the outstanding title. They knew that the records disclosed these facts. They knew that Jane N. Lewis did not derive title from the government, and they were put upon inquiry as to the source of her title. It would be absurd to claim that they did not know that Romeo Lewis was the patentee, and that Mrs. Lewis claimed under him. ·

*Mr. Robert E. Williams, Mr. W. G. Randall, Mr. W. S. Gibson* and *Mr. C. L. Capen* for defendants in error submitted on their brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

By the statutes of Illinois in force when the will of Romeo Lewis was made and took effect, it was provided that "in cases where, by the common law, any person or persons might hereafter become seized in fee tail of any lands, tenements, or hereditaments, by virtue of any devise, gift, grant, or other conveyance, hereafter to be made, or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be and become seized thereof, for his or her natural life only, and the remainder shall pass in fee simple absolute, to the person or persons to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass, according to the course of the common law, by virtue of such devise, grant or conveyance." Act of January 31, 1827, Rev. Laws Ill. 1833, § 6, pp. 127, 131; Rev. Stats. 1845, c. 24, § 6; Rev. Stats. 1874, c. 30, § 6. The court below held (43 Fed. Rep. 854) that Mrs. Lewis, under the will of her husband, would have taken, at common law, only an estate in fee tail, that is, an estate "confined in its descent to the posterity of some individual so as to cease upon failure of such posterity" — citing Burton on Real Property, 4. After observing, in the words of the same author, that upon a devise to a person and his issue or children the construction varies according to the circumstances, and that,

if the party have issue or children at the time when the devise is made, they will take estates for their lives jointly with their parent, but if he had no issue at that time he takes an estate tail, the court said that under the above statute Mrs. Lewis took only an estate for her natural life, and at her death, in default of heirs of her body, the heirs at law of the testator took the estate in fee. But, in view of the admitted facts, it was held that the defendants were protected by the statute of Illinois, prescribing the periods within which actions for the recovery of lands may be brought.

Much of the elaborate argument submitted by counsel is devoted to an inquiry as to the nature of the estate that Mrs. Lewis took under the will of her husband; the plaintiffs insisting that the court below correctly interpreted the will of the testator in connection with the statute. The defendants insist that the devise to Mrs. Lewis and to the heirs of her body was intended to be a devise to her and to the children of herself and the testator as a class of persons to take at the death of the testator, and that she as the only survivor at his death, of that class, took the whole estate absolutely. The defendants further insist that, even if the estate did not wholly vest at the death of the testator in Mrs. Lewis as the survivor of the class of persons who were the declared objects of his bounty, the fee did not remain in abeyance until her death, but vested at his death in those who were then his heirs at law, although such estate was liable to be divested on the birth of an heir to the body of the life tenant.

These questions have been discussed by counsel with marked ability. But it will not be necessary to pass upon them, if, as is contended, these actions, under any construction of the will, are barred by the statute of limitations of Illinois. To this question of limitation we will, therefore, direct our attention.

The statute just referred to, as it appears in the Revision of 1845, title Conveyances, provides: "§ 8. Every person in the actual possession of lands or tenements, under claim and color of title made in good faith, and who shall, for seven successive years, continue in such possession, and shall, also, during said time, pay all taxes legally assessed on such lands or tenements,

shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefits of this section." "§ 10. The two preceding sections shall not extend . . . to lands or tenements when there shall be an adverse title to such lands or tenements, and the holder of such adverse title is under the age of twenty-one years, insane, imprisoned, *feme covert*, out of the limits of the United States, and in the employment of the United States or of this State: *Provided*, Such person shall commence an action to recover such lands or tenements so possessed as aforesaid, within three years after the several disabilities herein enumerated shall cease to exist, and shall prosecute such action to judgment, . . ." These provisions first appeared in the act of March 2, 1839, entitled "An act to quiet possessions and confirm titles to land," and are preserved in the act of April 4, 1872, title Limitations. Purple's Real Estate Stat. Ill. p. 426; Rev. Stats. 1845, p. 104, c. 24, § 8; Rev. Stats. 1872, p. 674, c. 83, § 6; 2 Starr & Curtis, p. 1539.

Considering the different objects of sections eight and nine, the Supreme Court of Illinois in *Dunlap* v. *Daugherty*, 20 Illinois, 397, 403, said: "By the eighth section the person must be in possession under claim and color, and may pay taxes, under such claim and color of title for the required period of time; while by the ninth section he is not required to have possession, nor permitted to hold or pay taxes under a person having color, but must himself have the color of title and pay the taxes. This section does not permit a person claiming under color to rely upon the statute. But the eighth section, by its phraseology, does permit the person claiming under the color of title to hold the possession and to pay the taxes for his claim and possession, and the color of title when united make the claim and color of title and the possession required by the statute. . . . Justice would require more protection should

be given to the actual occupant, who expends his money and labor in improving the soil, and pays the taxes for the required period, than to the person who only pays the taxes, without occupation, for the same length of time." See also *Cofield* v. *Furry,* 19 Illinois, 183; *Darst* v. *Marshal,* 20 Illinois, 227; *Newland* v. *Marsh,* 19 Illinois, 376.

Under the stipulations of the parties, and the findings of fact, there can be no doubt as to the nature of the possession of the respective defendants. It was an actual, continuous possession under bonds and conveyances, promptly recorded, accompanied by the payment of all taxes assessed on the lands during the period of such possession. If, within the meaning of the statute, such possession was "under claim and color of title made in good faith," then the cases before us come within the very words of the statute, and the defendants, respectively, are entitled to be adjudged legal owners of the lands according to the purport of their respective paper titles, unless, as contended, limitation did not run against the plaintiffs until after the death of Mrs. Lewis.

That the defendants have been in actual possession for the required time, under claim and color of title made in good faith, is clearly established. It is true that Mrs. Lewis, under whom the several defendants claim, held under a tax deed, and that such a deed, when relied on as evidence of paramount title, must be supported by a valid judgment for the taxes, and a proper precept authorizing the sale. *Holbrook* v. *Dickinson,* 46 Illinois, 285; *Gage* v. *Lightburn,* 93 Illinois, 248, 252; *Pardridge* v. *Village of Hyde Park,* 131 Illinois, 537, 541; *Gage* v. *Bani,* 141 U. S. 344, 351. And it is also true that the records before us do not show any judgment for taxes against these lands, followed by a precept authorizing their sale, and only show a sheriff's deed to Mrs. Lewis, reciting a judgment and precept. But a sheriff's deed for land sold for taxes, regular on its face, and made to one who was under no obligation to pay the taxes, will, as between the grantee and the taxpayer, constitute, without proof of a judgment for the taxes, such color of title as will meet the requirements of the statute of limitations. It has been long settled in Illinois that

any deed or instrument in writing, no matter on what founded, if regular on its face, and purporting to convey the title to land of which a description is given, is sufficient color under the limitation act of 1839, although it might be ineffectual to establish paramount title, apart from possession and payment of taxes for seven successive years. *Holloway* v. *Clark*, 27 Illinois, 483, 486; *Dickenson* v. *Breeden*, 30 Illinois, 279, 326; *McCagg* v. *Heacock*, 34 Illinois, 476, 478; *Stubblefield* v. *Borders*, 92 Illinois, 279, 284; *Brooks* v. *Bruyn*, 35 Illinois, 392; *Fagan* v. *Rosier*, 68 Illinois, 84, 87; *Hardin* v. *Gouverneur*, 69 Illinois, 140, 143; *Lake Shore &c. Railway* v. *Pittsburgh, Fort Wayne, &c. Railway*, 71 Illinois, 38; *Coleman* v. *Billings*, 89 Illinois, 183, 190; *Stumpf* v. *Osterhage*, 111 Illinois, 82, 88.; *Baldwin* v. *Ratcliff*, 125 Illinois, 376, 384.

In cases 1211, 1212, 1213, 1214 and 1217, respectively, the purchaser from Mrs. Lewis went into possession under a bond for a deed. These bonds did not purport to convey the title, but were executory agreements entitling the purchaser to a deed. If it be said that possession under a bond for a deed, or under a contract for the purchase of land, neither purporting to convey the title, is not possession "under claim and color. of title," within the meaning of the statute, *Rigor* v. *Frye*, 62 Illinois, 507, 509; *Hardin* v. *Crate*, 78 Illinois, 533, 536, 537; *Robbins* v. *Moore*, 129 Illinois, 30, 46; a sufficient answer is that each bond was followed by a deed from Mrs. Lewis, purporting to convey the fee, and that from at least the execution of the latter deed the purchaser was in possession under such claim and color of title as the statute required. And even if we assume that the deed did not have relation back to the date and recording of the bond, so as to give the grantee the benefit of his actual possession under the bond — though the contrary view is asserted on the authority of *Snapp* v. *Peirce*, 24 Illinois, 156, 159; *Russell* v. *Mandell*, 73 Illinois, 136, 138; *Schneider* v. *Botsch*, 90 Illinois, 577, 580 — and that possession under the sheriff's deed by Mrs. Lewis was not adverse to those, if any, in remainder, and excluding therefore the entire period during which *she* held the apparent legal title which that deed conveyed, there was yet more than seven

years' actual possession by the defendants, accompanied by the payment of taxes under subsequent deeds duly recorded and purporting in each instance to convey the fee.

It results that these actions are barred by the statute, unless it be held not only that plaintiffs were reversioners, but that limitation could not run against them during the life of Mrs. Lewis. The general rule in Illinois, as elsewhere, undoubtedly is that limitation does not run against a reversioner or remainder-man, pending the prior estate, because during that time he has no right of entry. Having no right of entry, he is not deemed guilty of laches in failing to assert his rights during the existence of the life estate. *Higgins* v. *Crosby*, 40 Illinois, 260, 262; *Dugan* v. *Follett*, 100 Illinois, 581, 589; *Orthwein* v. *Thomas*, 127 Illinois, 554, 569; *Mettler* v. *Miller*, 129 Illinois, 630, 640; *Rohn* v. *Harris*, 130 Illinois, 525, 581.

But the case of *Dugan* v. *Follett*, just cited, shows that in its application this general rule is not without exceptions in Illinois. In that case it appears that by a decree rendered in a suit in equity brought in one of the courts of Illinois, an administrator was directed to invest certain moneys then in his hands in real estate, (no particular lands being specified,) and to convey the same to the plaintiff, Mrs. Jennings, for her life, with remainder in fee to the named heirs of her late husband. The investment was made, and a deed of that character was executed, November 20, 1850, to Mrs. Jennings. That deed was not put upon record, but the fact of its execution was reported to the court by the administrator, and his report placed among the files of the suit in which the decree, directing the investment, was made. Mrs. Jennings did not die until November 18, 1875. During her lifetime the lands passed into the possession of others under warranty deeds, conveying the title in fee. The dispute was between those parties and the persons in remainder. The evidence showed that those who held under the warranty deeds, and their immediate grantors, were in actual possession, adversely to all the world, without any knowledge that the plaintiffs had any claim as remainder-men to the premises, and paid all taxes assessed on the lands, "thus," the court said, "making out a clear case of possession,

payment of taxes under claim and color of title made in good faith for more than the statutory period." The court also said : " It is clear, therefore, unless there is something in the facts of this case which takes it out of the operation of the statute, the right to maintain the present proceedings is barred by the limitation act of 1839. It is a fundamental principle in the law of limitations that the statute never commences running until the right of entry accrues, and since by the limitations of the deed from Hugh Rhodes to Mrs. Jennings, under which appellees [the remainder-men] claim, their right of entry did not accrue until her death, which occurred less than seven years before the commencement of the present proceedings, it would seem to follow that this proceeding is not barred by the limitation act of 1839, and such undoubtedly would be the case *if* that deed had been properly *recorded*, or if appellants and those under whom they claim had purchased *with notice of appellees' rights*. But that deed was *never recorded*, and, as already stated, there is nothing to show that appellants, or their immediate grantors, *had notice of its existence*."

It was contended, in that case, that the administrator's report, showing the conveyance of the land to Mrs. Jennings for life, with remainder to the named children of her deceased husband, was constructive notice of the rights of those in remainder. To this the court replied that if the object of the suit had been " to compel the administrator to convey these particular lands, then we would have no hesitancy in holding the record of that case constructive notice of the rights of those claiming under the decree in it, whether the deed was placed upon record or not. But such was not the object of that suit. Neither the decree nor the pleadings in that case contain any description of these lands, or even make the slightest reference to them." It was held that purchasers were not bound to look beyond the judgment or decree and the legal effect it might have on the title which was the subject of inquiry; and were not chargeable with constructive notice of every fact that might appear on the files of the case in which such decree was rendered. In reply to the suggestion that the tenant for life, Mrs. Jennings, was bound to pay all taxes, and as the persons,

holding under the warranty .deeds, succeeded to that estate, they were bound to pay them, and, therefore, could not avail themselves of the limitation act of 1839, the court said: "Conceding such would have been the case *if the Jennings deed had been put upon record, or if appellants and those under whom they claim had purchased with notice of that deed,* yet appellants claim, as we have already seen, adversely to appellees, and independently of any rights acquired through the Jennings deed, and insist that inasmuch as that deed *was not placed upon record, and they did not otherwise have notice of it, they are not to be affected by its provisions; and in this we think they are right.* The recording and limitation laws are both a part of the law of the State, and of equal force and validity, and the court should so construe and apply them as to effectuate the objects and purposes of the legislature in adopting them. The 30th section of chapter 30 of the Revised Statutes, entitled 'Conveyances,' provides that all deeds, mortgages, etc., shall take effect and be in force from and after the time of filing the same for record and not before, as to all creditors and subsequent purchasers without notice, and all such deeds shall be adjudged void as to all such subsequent purchasers without notice until filed for record. To hold that appellants under the facts in this case are to be affected in any manner by the Jennings deed, would be to simply disregard this plain provision of the statute, which we are not permitted or inclined to do. In construing and giving effect to the limitation laws, courts must do so in such manner as to also give effect to this plain provision of the statute making all deeds void as against subsequent purchasers without notice until filed for record. *Kennedy* v. *Northup,* 15 Illinois, 148; *Holbrook* v. *Dickenson,* 56 Illinois, 497." That the title asserted by the remainder-men in that case was by deed, and not under a will, does not affect the principle upon which the decision rested.

So far as we are aware, the rule announced in *Dugan* v. *Follett* has not been disturbed or modified by any subsequent case. On the contrary, it was recognized in *Safford* v. *Stubbs,* 117 Illinois, 389, 394. The subsequent cases of *Mettler* v.

*Miller*, 129 Illinois, 630, 642, and *Rohn* v. *Harris*, 130 Illinois, 525, upon which the plaintiffs confidently rely, are not at all in conflict with *Dugan* v. *Follett*. In the first of those cases, *Mettler* v. *Miller*, the court affirmed the general rule announced in the previous cases, that "the possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner; and if he conveys to a third person, by words purporting to pass the absolute property, the possession of the purchaser is not and cannot be, during the continuance of the life estate, adverse to the remainder-man or reversioner, so as to set the statute of limitations running against such remainder-man or reversioner; but after a life estate falls in, the possession will be adverse as to a remainder-man or reversioner." But it is evident from the whole opinion that this rule was applied strictly against the parties who sought to take shelter under the statute of limitations, because the title *traced to them* and *under which they entered,* and *as it appeared of record,* showed that they had notice of the rights of the remainder-men when they took possession. That the court regarded the state of the title, as shown by the public records, to be important in determining whether the rights of the remainder-man could be affected by the actual possession, during the life estate, of one claiming under a deed conveying the fee, is clear from its reference to the case of *Safford* v. *Stubbs*. It said: "Nor can *Safford* v. *Stubbs et al.* avail appellee. Neither Berkey nor Reiner, his immediate grantor, *had notice* that the interest of Weiser in the premises was merely that of a life tenant, and *the records did not show it*." So, in *Rohn* v. *Harris*, above cited, where the parties held possession under color of title, and paid all taxes for more than seven years, the defence, based upon the statute of limitations, was overruled upon the ground, in part, that the various deeds and wills under which the parties held "were *upon the record, so that each purchaser had notice of the title under which he occupied the property*." See, also, *Dean* v. *Long*, 122 Illinois, 447, 460.

At the trial below the plaintiffs introduced in evidence "a certified copy of the will of Romeo Lewis from the recorder's

office of Woodford County, Illinois." To the copy of the will so recorded were appended the affidavits of the subscribing witnesses, made in the court of common pleas of Butler County, Ohio, at its June term, 1843, proving the execution of the will, a certificate by the judge and *ex officio* clerk of the probate court of that county, under date of August 2, 1866, to the effect that the foregoing was "a true and correct copy of the last will and testament of Romeo Lewis, late of said county, aforesaid, and of the affidavit of the subscribing witness thereto, and of the order and proceedings of said court admitting the same to probate, the said copies of said will, affidavit, order and proceedings having been taken from the originals on file and record in said court." These copies were, on August 15, 1866, filed for record and recorded in one of the deed records in the office of the circuit court clerk and *ex officio* recorder for Woodford County, Illinois. But the copies, so filed and recorded, did not, in fact, include copies of the order and proceedings of the probate court in Ohio admitting the original will to probate. The defendants objected to the admission of the above paper as evidence, because it did not show any order of the Ohio court admitting the will to probate, and was not properly certified. The paper was admitted in evidence subject to objection.

Was the record thus made in Illinois, August 15, 1866, in respect to the will of Romeo Lewis, notice from that date that Jane N. Lewis acquired, under the will of Romeo Lewis, a life estate only in his lands in that State? By the statutes of Illinois in force when that will took effect it was provided that "every will, testament or codicil, when thus proven to the satisfaction of the court of probate, shall be recorded by the judge thereof in a book to be provided by him for that purpose, and shall be good and available in law for the granting, conveying and assuring the lands, tenements and hereditaments, annuities, rents, goods and chattels therein, and thereby given, granted and bequeathed." The same statute contained this section: "Sec. 7. All wills, testaments and codicils, or authenticated copies thereof, proven according to the laws of any of the United States, or the territories thereof, or of any

country out of the limits of the United States, and touching or concerning estates within this State, accompanied with a certificate of the proper officer or officers that said will, testament, codicil or copy thereof was duly executed and proven, agreeably to the laws and usages of that State or country in which the same was executed, shall be recorded as aforesaid, and shall be good and available in law in like manner as wills made and executed in this State." Rev. Stat. Ill. 1833, pp. 612, 614, §§ 2 and 7. These provisions were retained in the acts of March 3, 1845, and March 20, 1872. Rev. Stat. 1845, c. 99, §·8, p. 538; Rev. Stat. 1874, c. 148, § 9. By the second section of the act of February 14, 1857, relating to conveyances, it was provided: "§ 33. All original wills, or copies thereof, duly certified according to law, or exemplifications from the record in pursuance of the law of Congress in relation to records in foreign states, may be recorded in the same office where deeds and other instruments concerning real estate may be required to be recorded; and the same shall be notice from the date of filing the same for record as in other cases." Laws Ill. 1857, p. 39; Gross's Stat. Ill. 1868, p. 108, § 35. This section was slightly modified by the Conveyance Act of March 29, 1872, but not so as to affect the question before us. Rev. Stat. 1874, p. 279, c. 30, § 33; 1 Starr & Curtis's Ill. Ann. Stat. 597.

It is clear from these statutes that the will of Romeo Lewis, or an authenticated copy thereof, proven according to the laws of Ohio, if accompanied with a certificate of the proper officers that the will was duly executed and proven, agreeably to the laws and usages of that State, could, at any time after it took effect, have been recorded in Illinois, and thereby become good and available in that State in like manner as wills there made and executed; and that from at least the passage of the act of 1857 it would have become, after the filing of the same for record, and in respect to the real estate devised by it, notice as in the cases of deeds conveying real estate. But it is equally clear that the copy of the testator's will filed and recorded in 1866, in the office of the recorder of Woodford County, was not authenticated or certified so as to entitle it to

record under the above statutes in Illinois. It was not certi-
fied to have been executed and proven according to the laws
and usages of the State of Ohio, where it was made. Besides,
while the certificate of the judge and clerk of the probate
court, in Ohio, refers to the order and proceedings of that
court admitting the will to probate, no copies of such order
and proceedings were, in fact, attached to the certified copy
of the will filed for record. If the certified copy of the will
filed for record had been accompanied by a duly certified copy
of the proceedings in the Ohio probate court, relating to the pro-
bate of the will, and if that would have been a compliance with
the statute, entitling the copy of the will to be recorded in Illi-
nois, it is certain that without certified copies of such proceed-
ings, or without a certificate by the proper officer, showing that
the will had been executed and proven agreeably to the laws of
Ohio, the copy of the will filed with the recorder of Woodford
County could not be recorded in Illinois, so as to make that
record notice as in cases of deeds or other written instruments
concerning real estate. *Baldwin* v. *Ratcliff*, 125 Illinois, 376,
384. It results that the recording in Illinois, in 1866, of what
purported to be the will of Romeo Lewis was without legal
effect, and was not, in law, notice that the lands in dispute
were part of those referred to in that will.

The contention of the plaintiffs is that even if the will was
not properly recorded in Illinois, it was, nevertheless, evidence
as to the title to the lands. *Shephard* v. *Carriel*, 19 Illinois,
313; *Newman* v. *Willetts*, 52 Illinois, 98; *Safford* v. *Stubbs*,
117 Illinois, 389. But this view does not meet the question
before us as to whether the record of the will in Woodford
County, from and after it was made, was itself notice to those
who purchased from Mrs. Lewis. A duly certified copy of the
will may be competent evidence upon the issue as to para-
mount title, but it could not operate as constructive notice of
its contents from the date of the insufficient record of it made
in 1866 in Woodford County.

It is said that the Book of Land Entries kept in the office of
the county clerk of Woodford County, and furnished by the
auditor to that officer for the purposes of taxation, furnished

evidence of the fact that Romeo Lewis was seized of these lands by patent from the United States, and that they were thus put upon inquiry as to the nature of the estate which Mrs. Lewis took.   But this fact would only have proved the ownership of the lands, at one time, by Romeo Lewis, not that he had made a will, which was recorded in Ohio, and which gave his wife only a life estate in his Illinois lands.   Besides, in *Betser* v. *Rankin*, 77 Illinois, 289, it was held that knowledge of the facts appearing in the Book of Land Entries must be brought home to purchasers.   "They are facts," the court said, "which, in order to affect a purchaser, he must have actual notice of; there is no constructive notice of such facts. At that time reports of the entries of public lands were certified by the auditor to the several county clerks in the State, and the list of entries so furnished by the auditor was copied by the clerk into his Book of 'Land Entries;' but all this was for the purposes of taxation, not of notice of the entries.   No such effect of notice has been given by law to such report or Book of Land Entries.   Such entries, books and papers, in the office of the county clerk are not constructive notice of their subject matter to subsequent purchasers."   See, also, *Bourland* v. *Peoria County*, 16 Illinois, 538; *Anthony* v. *Wheeler*, 130 Illinois, 128, 136.

Some reliance is placed upon the fact that the recitals in a deed for certain lands, made by Mrs. Lewis to one Mohr in 1853, indicated that they were devised to her by the will of her husband.   It is scarcely necessary to say that those recitals were not notice to those who purchased other lands from Mrs. Lewis of the existence of such a will or of its provisions, there being no valid record of it in Illinois.

It is proper, also, to say that no claim is made that this case is affected, in anywise, by the proviso in the statute of limitations saving the rights of persons laboring under certain named disabilities at the time the cause of action accrued. " The tax sale," the Supreme Court of Illinois has said, "although it may have been defective, and the title acquired under it, when relied upon alone as a title, might not have been regarded as valid, yet the deed which the defendant.

obtained, which, upon its face, purported to convey the land, was color of title. A title of this character, obtained in good faith, followed by the payment of all taxes legally assessed for seven successive years, while the land is vacant, and possession then taken, has been uniformly held by this court to be a valid title as against all persons, except such as may be under the disability named in the statute." *Whitney* v. *Stevens*, 77 Illinois, 585, 587. And in *McDuffee* v. *Sinnott*, 119 Illinois, 449, 452, it was held that when the bar of the statute becomes absolute, "the occupant thereby acquires such a title as he may successfully assert against all the world, including the paramount owner himself, except such as are laboring under disabilities." So clearly is this the case, the learned counsel for the plaintiffs in error frankly concedes, as he must have done, that these actions are barred by the statute, if limitation ran against them during the life of Mrs. Lewis, before or after she conveyed.

We are of opinion that, by the law of Illinois, the actual possession of the several defendants, for more than seven successive years prior to the commencement of these actions, of the lands in controversy, under claim and color of title made in good faith, that is, under deeds purporting to convey the title to them in fee, and the payment of all taxes legally assessed on them, without notice, actual or constructive, during that period, of any title to or interest in the lands upon the part of others that was inconsistent with an absolute fee in their immediate grantors, and in those under whom such grantors claimed, entitled them to be adjudged the legal owners of such lands according to their respective paper titles, even as against those, if any, who may have been entitled by the will of Romeo Lewis to take the fee after the death of Mrs. Lewis without heirs of her body. If that will only gave a life estate to Mrs. Lewis, and the plaintiffs, as reversioners or possible reversioners, had no right of entry pending the life estate, and, therefore, were not chargeable with *laches;* and if, as is contended, Mrs. Lewis, as life tenant, was under a legal obligation to pay the taxes for which the land was sold, and could not, by permitting them to be sold for taxes and

becoming the purchaser, acquire the fee and thereby despoil those in remainder; it was, nevertheless, in the power of the plaintiffs and those under whom they claim — long before the defendants became the owners of the lands by possession and payment of taxes, under claim and color of title made in good faith — to have placed the will of Romeo Lewis, duly proved, upon record in Illinois, and, in that mode, to have given notice of their interest in the lands.

*The judgment in each of the above cases is affirmed.*