**ROYAL BANK OF CANADA, Plaintiff**

v.

**ROY N. CLARKE, et al., Defendants**

Civil No. 595-1973

District Court of the Virgin Islands

Div. of St. Croix

April 1, 1974

BRYANT, COSTELLO & BURKE, Christiansted, St. Croix, V.I., *for plaintiff*

KENNETH LINDQUIST, Christiansted, St. Croix, V.I., *for defendants*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

In this motion for summary judgment by plaintiff Royal Bank of Canada on its action for debt and foreclosure, an issue of law is raised as to the relative priority of a mortgage lien held by the Royal Bank and one held by co-defendant Frank Wiesner. The chronology of events, which is undisputed, is as follows. On April 29, 1971, co-defendant Roy N. Clarke purchased by contract from Wiesner the plot of land now subject to the Royal Bank's foreclosure action. Clarke made a down payment of $1,000 and agreed to pay the remainder of the $7,500 purchase price, plus interest, in monthly installments. Thereafter, on August 7, 1971, Clarke, as mortgagor, executed a purchase money mortgage in favor of Wiesner to secure the unpaid principal and interest. On the same date, Clarke received a warranty deed to the property from Wiesner.

On January 7, 1972, Clarke executed a promissory note for $40,000, plus interest, to the Royal Bank, secured by a mortgage on the plot in question. By unopposed affidavit, it is established pursuant to Rule 56(e) that the Royal Bank had no actual knowledge of Wiesner's then outstanding lien. The record does not show whether Clarke's warranty deed had been recorded by January 7, or whether the Royal Bank had actual knowledge of its terms. However, nothing in the August 7 deed would give Royal Bank notice, actual or constructive, of the prior mortgage. On the contrary, the deed indicated that the entire purchase price had been paid.

The Royal Bank recorded its mortgage on January 14, 1972. Among the provisions of the recorded indenture was one that the lien of the mortgage on the plot would "also secure any and all sums now or from time to time hereafter owing to Mortgagor [sic] and for which Mortgagor may be liable, solely or jointly." Pursuant to this provision Clarke executed, on September 26, 1972, an additional promissory note for $3,000, and interest, in favor of the Royal Bank, which relied on its existing secured position. At this date as well, the Royal Bank had no actual or constructive knowledge of Wiesner's mortgage. Wiesner recorded his mortgage on July 9, 1973.

At common law, mortgage priority, absent a recording statute, was determined by the maxim "prior in tempore, potior in jure." E.g., Wood v. Weimar, 104 U.S. 786, 794, 26 L.Ed. 779, 781 (1881). The initial question, therefore, is whether the Virgin Islands legislature has provided for notice priority, a remedial step taken long ago by most other jurisdictions. See Jones, A Treatise on the Law of Mortgages of Real Property § 456, n. 2 (7th ed. 1915). As far as can be ascertained this is a question of first impression. The answer depends upon the construction of 28 V.I.C. § 124, which provides:

Every conveyance of real property hereafter [1921] made within the Virgin Islands which is not filed for record shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance is first duly recorded.

With respect to this provision, it is obvious that the reference to "subsequent innocent purchaser[s]" is not an apt description of mortgagees in a lien theory jurisdiction such as the Virgin Islands. Likewise, it would make little sense to provide that an unrecorded mortgage, first in time, be rendered "void," instead of subordinated, by a subsequent recorded mortgage. On the other hand, "conveyance," as de-

fined in 28 V.I.C. § 1 (" 'conveyance' includes every instrument in writing except a last will and testament, whatever may be its form and by whatever name it may be known in law, by which any estate or interest in lands is created, aliened, assigned, or surrendered."), would include mortgages. However, the definition in § 1 is not operative if "the context requires a different meaning," or a different meaning is "otherwise provided" for.

When construing statutory enactments of the Virgin Islands legislature, this Court has oftentimes looked behind the literal phraseology employed and sought to implement the actual intent of the legislature. See, e.g., Government of the Virgin Islands v. Ortiz, 1 St.X.Supp. 77 (1972); Government of the Virgin Islands v. Santos, 2 St.X.Supp. 552 (1973); Simon v. Lovgren, 2 St.X.Supp. 593 (1973); HMW Industries, Inc. v. Wheatley, 2 St.X.Supp. 602 (1973); cf. Johnson v. International Business Machines Corp., 2 St.X.Supp. 581, 587 n. 6 (1973). This nonliteral approach is especially valid in the case of remedial statutes, such as recording acts, which are generally construed by courts to effectuate underlying legislative policies. Lewis v. Barnhart, 145 U.S. 56, 36 L.Ed. 621, 12 S.Ct. 772 (1892); cf. Silverlight v. Huggins, 347 F.Supp. 895 (D.C.V.I. 1972), rev'd in part, 488 F.2d 107 (3d Cir. 1973). At the very least, the Virgin Islands statute is intended to allow a prospective buyer of land to determine with assurance the condition of title, and thus to facilitate the sale of land. To attach no priority to recorded mortgages as against unrecorded mortgages would frustrate this policy, because a prospective buyer could never be certain that unrecorded mortgages might not affect title. In addition, it seems likely that the legislature sought to facilitate loans secured by land, as well as the sale of land, since the same basic policy of flexible land ownership would be involved. To be sure, when § 124 was enacted in 1921, the legislature may not

have been so sensitive to the smooth functioning of the real estate market as it would be today "in view of the intense activity in real estate on this island at this time," Lucerne Investment Co. v. Estate Belvedere, Inc., 7 V.I. 275 (D.C.V.I. 1969). Nonetheless, the basic policy goal of commercial freedom in land transactions, although not artfully translated into statute in 1921, seems to have been present, as evidenced by the broad, general meaning of "conveyances" stated in § 1 (which is based upon a 1921 enactment). In this regard, it is significant that any argument for a restricted meaning of "conveyance" in § 124 must rest on context and that the legislature did not choose the alternative offered in § 1 of providing a specific limited meaning for "conveyances" as used in § 124.

With all these considerations in mind, this Court must choose to give more weight to the intention of the legislature, which by its use of "conveyance" clearly meant to establish priority for recorded mortgage liens, than to the apparent contradictory meaning of the body of § 124, which would seem to limit "conveyances" to transfers of title. The same result has been reached by other courts construing similar statutes, although it is not clear to what extent a title theory of mortgages influenced their determinations. See Second Nat. Bank v. Dyer, 121 Conn. 263, 184 A. 386 (1936) ("No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which it lies."); Federal Land Bank of Berkeley v. Pace, 87 Utah 156, 48 P.2d 480 (1935) ("Every conveyance of real estate hereafter made which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."). Of course, § 124 must be construed as imposing appropriate sanctions on

nonrecording mortgagees. Thus an unrecorded mortgage prior in time to a recorded mortgage will not be "voided" thereby, but merely subordinated in the priority of its lien.

Under this construction, the initial $40,000 note given to Royal Bank by Clarke is superior to the lien of Wiesner. Likewise, the subsequent note for $3,000 is protected, although not itself recorded. The plain provisions of Royal Bank's recorded mortgage put any subsequent buyer or lender on notice that additional liabilities may have accrued. Accord, Potwin State Bank v. J. B. Houston & Son Lumber Co., 183 Kan. 475, 327 P.2d 1091 (1958). Since the policy of notice underpinning the recording statute are thereby fulfilled, it follows that the $3,000 advance should not be denied the priority which is the reward for complying with the statute. Indeed, it is held that future advances under such a first recorded mortgage are prior in right to mortgages prior in time, even if such mortgages should be recorded before the advances are made, absent actual notice. See, e.g., Central Trust Co. v. Continental Iron Works, 51 N.J.Eq. 605, 28 A. 595 (Ct. of Errors and Appeals 1894). Of course, in the instant case, Wiesner's lien did not become of record until well after the $3,000 note was made.[1]

---

[1] Defendant Wiesner advances an alternative argument for priority based on the fact his lien was a purchase money mortgage. And it is true that in certain limited cases purchase money mortgages are given a kind of priority, the rule being that such mortgages are favored "over *outstanding* interests acquired through the mortgagor." 55 Am.Jur.2d Mortgages § 349 (Italics added.) This rule is intended to prevent any preexisting or simultaneous claims against a buyer-mortgagor from attaching their lien to the property newly acquired, to the detriment of the seller-mortgagee's security for the purchase price. To reach this result, it is said that the transfers of the deed and mortgage are constructively simultaneous acts, so that no other claim may intrude although prior in time, United States v. New Orleans & O.R.R., 11 Wall. (U.S.) 362, 20 L.Ed. 434 (1871), or that the purchase money mortgage is a reservation of interest by the seller-mortgagee, so that attachable title thereon does not pass to the buyer-mortgagor, Keuhn v. American Nat. Bank, 117 Kan. 717, 232 P. 1060 (1924). From the above, it may clearly be seen the special rule of priorities for purchase money mortgages is not an exception to the priorities imposed by recording statutes, but rather a refinement of these

■■■■■■■■■■■■■■■■

## ORDER

On the premises considered, it is hereby ORDERED that plaintiff Royal Bank of Canada's Motion for Summary Judgment be GRANTED as to all defendants, an Order of Judgment to be submitted by counsel.

---

priorities. As such, it has no application whatever to liens subsequent in time, for example the Royal Bank's mortgage in the instant case, since the purchase money mortgagee can protect himself against such liens fully by the simple expedient of recording his mortgage.