GEORGE P. BLISS

*v.*

SILAS E. SEELEY *et al.*

191    461|
|101a ⁴264|
|191    461|
e105a⁴388|

*Opinion filed October 24, 1901.*

1. WILLS—*when recorded copy of foreign will does not operate as notice.*
Under section 9 of the act on wills and section 33 of the Conveyance
act, an authenticated copy of a foreign will, although recorded
in Illinois, does not operate as notice to third persons acquiring
interests adverse to those of the devisees, where the certificate
accompanying the will does not state that the will "was duly exe-
cuted and proved agreeably to the laws and usages" of the State
or country where the will was made.

2. SAME—*when foreign will is not effective as against purchasers.*   A
foreign will is not effective as against persons acquiring lands ad-
versely to the devisees without actual notice, where no exemplified
or properly certified copy of the will has been recorded in Illinois.

3. SOLICITORS' FEES—*evidence must be preserved to sustain allowance
in partition.*   To sustain an allowance of complainant's solicitor's
fee as costs in partition, the evidence as to the value of the ser-
vices must be preserved in the record, either by the recitals of the
decree or in the certificate of evidence.

4. SAME—*defense need not be successful to be of a substantial character.*
Under the statute allowing the court to apportion complainant's
solicitor's fee in partition, if the rights of the parties are cor-
rectly set forth in the bill, unless some defendant shall interpose
a good and substantial defense, the defense referred to need not
be successful if of a substantial character, and not merely formal,
frivolous or vexatious.

APPEAL from the Circuit Court of Shelby county; the
Hon. SAMUEL L. DWIGHT, Judge, presiding.

This is a bill for the partition of one hundred and
sixty acres of land in Shelby county, filed originally
on September 3, 1900, by the appellee, Silas E. Seeley,
against the appellant, George P. Bliss, and the follow-
ing persons, to-wit: Absolom H. Kercheval, George A.
Hall, Estella Denham, Caroline McDonald, James C.
Hall, Dora A. Hall, Sarah S. Smith, Minnie Cloe, Etta
B. Middleton and Mary Jane Pollock.   The original bill
prayed for a division of the lands between appellee, Silas

E. Seeley, and the appellant, George P. Bliss, and Mary Jane Pollock, according to their respective interests.

On December 3, 1900, the appellant, George P. Bliss, filed a demurrer to the bill upon the ground that it did not appear therefrom that the complainant therein had any interest in or title to the premises described in the bill. The bill was amended, and as amended was again demurred to. The demurrer to the amended bill was sustained, and the bill was again amended not only by changing the allegation therein as to the nature of the complainant's interest in the property, but also by making Mary Jane Pollock a party complainant. To the bill as finally amended the appellant, George P. Bliss, filed a separate answer.

Subsequently, on January 1, 1901, one Annie E. Hall, who is shown by the record to have been the wife of Newton W. Hall, filed her petition asking to be made a party defendant to the bill, and claiming an interest in the premises under the alleged will of David William Hall hereinafter mentioned. Leave was finally given to Annie E. Hall, after her original petition had been stricken from the files by consent, and after she had filed an amended petition, to become a defendant in the cause, and to file an answer to the bill. Annie E. Hall did file an answer to the bill, setting up the interest claimed by her. Replications were filed to her answer and to the answer of George P. Bliss.

The bill was taken for confessed against all the defendants thereto except Bliss, Annie E. Hall and Mary Jane Pollock.

On March 7, 1901, a decree was rendered in the cause, ordering that partition be made between Silas E. Seeley, Mary Jane Pollock, Annie E. Hall and George P. Bliss, and appointing commissioners to make the partition, directing them to give to the said last named parties certain undivided interests in and to said premises, as therein mentioned.

The commissioners reported that the premises were not susceptible of division, and appraised the value of the same at $9000.00. Thereupon, upon the same day, a decree was entered for the sale of the property by a special commissioner therein named; and, by the terms of this decree, the solicitor of the complainant below, the appellee here, Silas E. Seeley, was allowed a fee of $500.00 for his services, and said allowance so made was directed to be taxed and paid as costs. Exception was taken by the appellant, Bliss, and appeal perfected to this court.

The only errors assigned in this case are assigned by the appellant, George P. Bliss. No errors or cross-errors are assigned by Newton W. Hall, or Annie E. Hall, or Mary Jane Pollock.

The facts in the case, as set up in the pleadings and proofs, and as shown by the report of the special commissioner and by the decrees of the court, are as follows:

On or about September 15, 1886, one James A. Hall was the owner of the one hundred and sixty acres in question, and on said last mentioned day died testate, leaving Caroline Hall, his widow, and David William Hall, Newton W. Hall, Estella Hall, Harriet A. Hall, Sarah S. Hall, Etta Belle Hall, Minnie Hall, James C. Hall, George A. Hall and Mary Jane Hall, his children and only heirs. By the terms of his will James A. Hall left all his property, both real and personal, to his widow, Caroline Hall, during her natural life, or as long as she should remain his widow; and, in case she should marry, bequeathed to her one-third part of all his estate. The will directed that, at the death of the testator's wife, should she remain his widow, his estate should be divided among ten of his children, including Bertie Hall, and excluding Mary Jane Hall, giving and bequeathing equal portions of his estate to them, share and share alike. By his will he gave to his daughter, Mary Jane Hall, the sum of $5.00. The will also provided that, in case his

wife, Caroline, should marry again, she should have one-third of all the testator's estate, both real and personal, and that the remainder thereof should be divided among his children above named, excluding Mary Jane Hall. Bertie Hall died without issue before the death of James A. Hall.

David William Hall, Newton W. Hall and Mary Jane Hall, above named, were the children of the testator by a former wife, and were not the children of Caroline Hall. All the other children above named were the children of Caroline Hall.

On or about April 25, 1887, David William Hall died at Pueblo in the State of Colorado. Upon the theory that he died intestate, he left, as his heirs-at-law, his brothers and sisters, being the nine children of James A. Hall above named, including Mary Jane Hall, and excluding Bertie Hall.

In July, 1888, Harriet A. Hall married one Absolom H. Kercheval, and afterwards, in June, 1889, died intestate and without children, and leaving, as her only heirs-at-law, her husband, Absolom H. Kercheval and her eight brothers and sisters above named, being the children of James A. Hall then living.

Subsequently, Estella Hall married William Denham; Sarah S. Hall married Noble E. Smith; Minnie Hall married one Cloe; Etta B. Hall married William M. Middleton; and Mary Jane Hall married one Pollock.

In November, 1899, Caroline Hall, the widow of James A. Hall, married Thomas McDonald.

The bill, as originally filed, alleged that, on September 12, 1891, D. L. Colbert, sheriff of Shelby county, conveyed to complainant, Silas E. Seeley, all the undivided interest that Newton W. Hall had in and to the one hundred and sixty acres described in the bill. The bill, as finally amended, alleged that one John W. Ardery recovered a judgment against Newton W. Hall for the sum of $634.25 and costs, on which execution was issued on May

2, 1890, directed to the sheriff of Shelby county to execute; that, thereunder, the sheriff levied upon all the interest of Newton W. Hall in and to the lands described in the bill; that the lands were duly advertised for sale and struck off and sold to Ardery, to whom a certificate of purchase was issued by the sheriff; that Ardery afterwards assigned said certificate to Silas E. Seeley; and that, on September 12, 1891, the time of redemption having expired, the sheriff executed a deed to Seeley of all the interest of Newton W. Hall in and to said lands. The proceedings, showing the judgment against Newton W. Hall and the sale, were introduced in evidence. The sheriff's deed was also introduced in evidence.

On July 3, 1900, Absolom H. Kercheval and Linnie A., his wife, (being his second wife after the death of Harriet A., above named,) George A. Hall and Lola, his wife, Estella Denham and William, her husband, Caroline McDonald and Thomas, her husband, James C. Hall and Dora A., his wife, Sarah S. Smith and Noble E., her husband, Minnie Cloe, and Etta B. Middleton and William M., her husband, executed a deed to the appellant, George P. Bliss, conveying to him their interests in said one hundred and sixty acres, which said deed was recorded in the recorder's office of Shelby county on August 12, 1900.

The answer of the appellant, Bliss admitted the allegations of the bill substantially as above set forth, except that it denied that Seeley acquired any interest in the premises by virtue of the judgment, certificate of sale and sheriff's deed, above named. The answer also denied that the respective rights and interests of the parties in said bill were correctly stated therein, and denied that complainant was entitled to any relief.

In her petition to be made a party defendant to the bill, and in her answer to the bill, Annie E. Hall denied that David William Hall, the brother of her husband, Newton W. Hall, died intestate, and averred that, on or

about April 10, 1885, David William Hall died testate and left a last will and testament, by the terms of which he devised all his interest in the estate of his father, James A. Hall, deceased, to her, the said Annie E. Hall, in consideration of money furnished to him by her during his two years' sickness. Her petition and answer also alleged that, on March 12, 1900, the will of David William Hall was proven and admitted to probate in the probate court of Hitchcock county, Nebraska, and that, by the terms of said will, she became the owner of all the interest of David William Hall in the lands sought to be partitioned.

When the testimony was taken before the special commissioner, to whom the cause had been referred to take the evidence and report conclusions, the solicitor of Annie E. Hall introduced in evidence what purported to be a transcript of proceedings in the probate court of Hitchcock county, Nebraska, in the matter of the estate of David William Hall, deceased, exemplified and certified to by C. W. Shurtleff, county judge and clerk and custodian of the records in said Hitchcock county. These proceedings recite that on February 16, 1900, Newton W. Hall filed a petition in the county court of Hitchcock county in the matter of said estate, setting up that David William Hall died at Pueblo, Colorado, April 25, 1887, and left no widow or children, and certain persons as his heirs, and praying for the admission of said will to probate. The proceedings further show that notice was given by publication for three successive weeks, and that a hearing was had by said probate court of Hitchcock county on March 12, 1900, on which date an order was entered admitting said will to probate. This will bore date April 10, 1885, and, by its terms, David William Hall willed "my interest, right and title of my share of my father's estate in Shelby county, Illinois, to Annie Hall, the wife of Newton Hall, for money furnished me during two years' sickness." The will purported to be signed

by two subscribing witnesses living in the town of Stratton in Hitchcock county, Nebraska. To the will was attached a certificate, signed by C. W. Shurtleff as county judge for the county of Hitchcock, aforesaid, and dated December 10, 1900. This copy of the will of David William Hall, together with the proceedings above mentioned, and the certificate thereto attached, was recorded in the recorder's office of Shelby county on December 17, A. D. 1900, several months after the present suit for partition was begun.

Counsel for Annie E. Hall also introduced in evidence a will of David William Hall, exactly the same in terms as the will last above mentioned, but dated April 10, 1887, instead of April 10, 1885, which was witnessed by the same two subscribing witnesses, and to which was attached a similar certificate by the county judge, said certificate, however, being dated November 12, 1900, instead of December 10, 1900. The will, dated April 10, 1887, purported to have been admitted to probate in the county court of Hitchcock county on the same day, to-wit: March 12, 1900, on which the will of April 10, 1885, was probated; but the said will of 1887, together with the certificate thereto attached, was never recorded in Shelby county either in the probate or county court of said county, or in the recorder's office of said county.

The special commissioner, to whom the cause was referred, found that David William Hall died intestate, and refused to consider the will of David William Hall as vesting any interest in Annie E. Hall.

Upon the trial of this cause in open court, after objections had been filed to the special commissioner's report before him and had been overruled, and after the date of the report had been changed from February 9, 1901, to February 11, 1901, and after exceptions had been filed to the report and its findings by Annie E. Hall, counsel for Annie E. Hall offered in evidence still another copy of what purported to be a will of David William Hall,

deceased, dated April 10, 1885, and the proceedings al-
leged to have taken place in the probate court of Hitch-
cock county, Nebraska, upon the probate thereof, together
with a new certificate signed by C. W. Shurtleff, judge of
the probate court of said Hitchcock county, dated Feb-
ruary 16, 1901.  These last proceedings and the copy of
the will were the same as those first introduced by coun-
sel for Annie E. Hall, except that there was a new cer-
tificate, which certified that said will was duly executed
and proven in said probate court of Hitchcock county,
agreeably to the laws and usages of the State of Ne-
braska, and that said certificate was in due form of law,
as required by the statutes of the United States and of
the State of Nebraska.  This last copy of the will and
of the proceedings for its probate, and of the certificate
attached to it, were never recorded either in the probate
or county court of Shelby county, or in the recorder's
office of said county.

CUNNINGHAM & BOGGS, and WALTER C. HEADEN, for
appellant.

E. A. RICHARDSON, for appellees Silas E. Seeley and
Mary Jane Pollock.

CHAFEE & CHEW, and WILLIAM H. CRAIG, for appel-
lee Annie E. Hall.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

*First*—The first question, presented by the record in
this case, relates to the validity or invalidity of the deed,
executed to the appellant, Bliss, on July 3, 1900, and
recorded on August 12, 1900, as affected by the will of
David William Hall, alleged to have been admitted to
probate in Hitchcock county, Nebraska, on March 12,
1900.  Upon the assumption that David William Hall died
intestate, his heirs were his brothers and sisters named

in the statement preceding this opinion, as he died un-married and without children; and, by the deed of July 3, 1900, all the interest, which David William Hall had in the premises when he died, except the interests which passed at his death to his brother, Newton W. Hall, and his sister, Mary Jane Hall, was conveyed to the appel-lant, Bliss. In other words, upon the assumption of in-testacy, Bliss obtained by his deed whatever interest in the property, owned by David William Hall at the time of his death, passed to his heirs, except that which was inherited by the brother and sister last above named. If, however, the will of David W. Hall, alleged to have been made in Nebraska, is a valid instrument and is in force as against the deed made to Bliss, then whatever inter-est David William Hall owned in the land at the time of his death passed to Annie E. Hall, the devisee in his will; and the deed to Bliss conveyed to him none of the interest, which may have been owned by David William Hall when he died.

The material inquiry, therefore, is, whether any in-terest, that may have been owned by David William Hall at the time of his death, passed by the deed in question to Bliss, or whether the will of David William Hall is so far valid as to make such deed of no effect so far as it attempted to convey such interest.

There is nothing in the alleged will of David William Hall or in the proceedings for its probate in Nebraska, which appeals to our favorable consideration. The will, as presented at one time, purports to bear date on April 10, 1885, and, as presented at another time, purports to bear date on April 10, 1887. David William Hall died in Colorado on or about April 25, 1887. But the will claimed to have been left by him was not presented for probate until the 16th day of February, 1900, nearly thirteen years after the death of David William Hall. No ex-planation is given of this long delay, or of the where-abouts of the will in the meantime. The proof tends to

show that David William Hall resided in the State of Kansas, and yet the proceedings for the probate of his will were taken in the State of Nebraska. The petition to the county court of Hitchcock county in Nebraska, asking for the probate of the will, was signed and presented by Newton W. Hall, the husband of Annie Hall, who was the sole devisee in the will. Upon the trial of the cause, sections 140, 141, 142 and 143 of the laws of the State of Nebraska, relating to the probate of wills, were introduced in evidence. Said section 141 provides that "if no person shall appear to contest the probate of a will at the time appointed for that purpose, the court may, in its discretion, grant probate thereof on the testimony of one of the subscribing witnesses only, if such a witness shall testify that such will was executed in all the particulars as required in this chapter, and that the testator was of a sound mind at the time of the execution thereof." Said section 142 provides as follows: "If none of the subscribing witnesses shall reside in this State at the time appointed for proving the will, the court may, in its discretion, admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will, and, as evidence of the execution of the will, may admit proof of the handwriting of the testator, and of the subscribing witnesses."

It appears from the order entered on March 12, 1900, admitting the will to probate, that Newton W. Hall made affidavit that both of the subscribing witnesses to the will who, in their lifetime, had lived in Hitchcock county, Nebraska, were dead; and Newton W. Hall, although the husband of the sole devisee in the will, swore that the signature thereto was the signature of David William Hall. His signature was also sworn to by one other witness, named Edwin Wilson. Wilson and Newton W. Hall swore that David William Hall was of sound mind and memory in the fall of 1885, and also in the fall of 1886, although the will was made before either of those dates,

to-wit, on April 10, 1885. Neither Wilson nor Newton Hall, the only witnesses sworn upon the probate of the will, testified to the handwriting of the subscribing witnesses to the will, nor was there any testimony as to the signatures of the subscribing witnesses.

While the circumstances thus referred to justly subject the will and the proceedings for its probate to suspicion, we are not prepared to say that it should be rejected as a valid will on account of these suspicious circumstances alone. But we are of the opinion for the reason hereinafter stated, that such will should not prevail against the deed made to the appellant, Bliss, so far as such deed purported to convey the interests of the brothers and sisters of David William Hall, and others holding under them, who signed said deed.

Section 9 of the statute of this State in regard to wills provides that "all wills, testaments and codicils, or authenticated copies thereof, proven according to the laws of any of the United States, or the territories thereof, or of any country out of the limits of the United States, and touching or concerning estates within this State, accompanied with a certificate of the proper officer or officers that said will, testament, codicil or copy thereof was duly executed and proved, agreeably to the laws and usages of that State or country in which the same was executed, shall be recorded as aforesaid, and shall be good and available in law, in like manner as wills made and executed in this State." (3 Starr & Curt. Ann. Stat.—2d ed.—p. 4040). The words in the last quoted section, "shall be recorded as aforesaid," evidently refer to the recording by the clerk of the county court in a book to be provided by him, as stated in section 2 of the Statute of Wills. (Ibid. p. 4026). Section 9 of the Statute of Wills, as above quoted, is the same as was section 8 in the Revised Statutes of 1845.

On February 14, 1857, an act of the legislature was passed which, with slight changes and additions, appears

now in the Revised Statutes as section 33 of the act in regard to conveyances.   Said section 33 of the act in regard to conveyances is as follows: "All original wills duly proved, or copies thereof duly certified, according to law, and exemplifications of the record of foreign wills made in pursuance of the law of Congress in relation to records in foreign States, may be recorded in the same office where deeds and other instruments concerning real estate may be required to be recorded; and the same shall be notice from the date of filing the same for record as in other cases, and certified copies of the record thereof shall be evidenced to the same extent as the certified copies of the record of deeds."   (1 Starr & Curt. Ann. Stat.—2d ed.—p. 954).   Certainly the following words in section 33, to-wit: "the same shall be notice from the date of filing the same for record as in other cases," were intended to have some meaning.   If "exemplifications of the record of foreign wills made in pursuance of the law of Congress in relation to records in foreign States," operate as notice from the date of filing the same for record in the recorder's office of a county in this State, then third persons, acquiring interests in land adverse to the devisees in such wills, cannot be said to have constructive notice of such wills when such exemplifications are not so recorded.

In the case at bar, it is not claimed that the appellant, Bliss, had any actual notice of the existence of the will of David William Hall when he obtained his deed, dated July 3, 1900, and recorded August 12, 1900.   There was nothing upon record in the recorder's office of Shelby county, or elsewhere in this State, which would give him constructive notice of the existence of the will of David William Hall when he obtained or recorded his deed.   It is true that, on December 17, 1900, what purported to be a certified copy of the will of David William Hall, and of the proceedings for the probate thereof, was recorded in the recorder's office of Shelby county.   If the certificate

to the copy, so recorded on December 17, 1900, had been regular and in proper form, the record of it on that day would have been no notice, as the appellant, Bliss, had obtained and recorded his deed theretofore on August 12, 1900. But the record of the copy on December 17, 1900, was no notice, because the certificate attached thereto was not in proper form. Section 9 above quoted provides that the authenticated copy of a foreign will must be accompanied by a certificate that the will was "duly executed and proved, agreeably to the laws and usages of that State or country in which the same was executed." The certificate, attached to the copy recorded on December 17, 1900, did not state that the will of David William Hall was duly executed and proved agreeably to the laws and usages of Nebraska. Its record was, therefore, no notice to the appellant, Bliss. (*Lewis* v. *Barnhart*, 145 U. S. 79; *Harrison* v. *Weatherby*, 180 Ill. 418).

This precise question was passed upon by the Supreme Court of the United States in the case of *Lewis* v. *Barnhart, supra.* There, section 9 of the act in regard to wills and section 33 of the act in regard to conveyances are quoted, and the following views are expressed by the Federal Supreme Court, to-wit: "It is clear from these statutes that the will of Romeo Lewis, or an authenticated copy thereof, proven according to the laws of Ohio, if accompanied with a certificate of the proper officers that the will was duly executed and proven agreeably to the laws and usages of that State, could, at any time after it took effect, have been recorded in Illinois, and thereby become good and available in that State in like manner as wills there made and executed; and that, from at least the passage of the act of 1857, it would have become, after the filing of the same for record, and in respect to the real estate devised by it, notice as in the cases of deeds conveying real estate. But it is equally clear that the copy of the testator's will, filed and recorded in 1866 in the office of the recorder of Woodford

county, was not authenticated or certified so as to entitle it to record under the above statutes in Illinois. It was not certified to have been executed and proven according to the laws and usages of the State of Ohio, where it was made. * * * It results that the recording in Illinois in 1866 of what purported to be the will of Romeo Lewis was without legal effect, and was not, in law, notice that the lands in dispute were part of those referred to in that will."

As to the copy of the will dated April 10, 1887, the certificate was defective in the same respect as that attached to the copy of the will dated April 10, 1885; and no copy of the will of 1887 was ever recorded in the county court or recorder's office of Shelby county. Upon the trial, however, of this cause in the court below, the solicitors of Annie E. Hall introduced in evidence an authenticated copy of the will of David William Hall and of the proceedings for the probate thereof in Hitchcock county, Nebraska, accompanied by a certificate which certified that the will was duly executed and proven in said court agreeably to the laws and usages of the State of Nebraska. But this exemplified copy, which bore date February 16, 1901, after the special commissioner to whom the cause had been referred had taken all the testimony in the case and submitted his report, was not recorded at all in the recorder's office of Shelby county, Illinois. It is contended on behalf of Annie Hall, that it was properly admitted in evidence, and established the validity of the will of David William Hall, notwithstanding it had never been recorded. This contention is supposed to receive some support from the cases of *Shephard* v. *Carriel,* 19 Ill. 313, and *Newman* v. *Willetts,* 52 id. 98. In the *Shephard case* it appeared that the exemplified copy of the foreign will and the proceedings for its probate therein introduced were filed for record in the county court and in the recorder's office before the act of February 14, 1857, was passed; and that the suit there de-

cided was begun in 1856 before the passage of the latter act. In addition to this, what was said in the *Shephard case*, to the effect that it was immaterial when the papers in question were filed, had reference to the filing of the same. in the probate court, and not in the recorder's office, so that, there, the act of February 14, 1857, was not considered or passed upon. In. the *Newman case* there was no question as to the effect of the record of a foreign will as against an interest in land acquired by third persons holding adversely to the devisees under the will. The simple question in the *Newman case* was whether Mrs. Newman took an interest in the land in Illinois under a will, made by her deceased husband in Louisiana; but no point was made as to her right to hold that interest as against third persons. Therefore, the *Shephard* and *Newman cases* are not authority for the position, that a foreign will is valid and of effect, as against third persons without actual notice holding land adversely to it in this State, where no exemplified or properly certified copy of such will has been recorded in this State. Such, substantially, was the holding of this court in *Harrison* v. *Weatherby, supra,* and of the Supreme Court of the United States in *Lewis* v. *Barnhart, supra.*

In *Lewis* v. *Barnhart, supra,* the same contention was made as is made here, namely, that a properly authenticated copy of a valid will was effective when introduced in evidence even though not recorded in this State; and, in that case, the Supreme Court of the United States held as follows: "The contention of the plaintiffs is that, even if this will was not properly recorded in Illinois, it was, nevertheless, evidence as to the title to the lands. (*Shephard* v. *Carriel,* 19 Ill. 313; *Newman* v. *Willetts,* 52 id. 98; *Safford* v. *Stubbs,* 117 id. 389). But this view does not meet the question before us as to whether the record of the will in Woodford county, from and after it was made, was itself notice to those who purchased from Mrs. Lewis. A duly certified copy of the will may be competent evi-

dence upon the issue as to paramount title, but it could not operate as constructive notice of its contents from the date of the insufficient record of it made in 1866 in Woodford county."

We are, therefore, of the opinion that the court improperly held that Annie Hall took all the interest of David William Hall in the premises in question under and by virtue of the will made in Nebraska; and that the appellant, Bliss, under his deed, became possessed of all the interest in the land in question formerly owned by David William Hall, except the interests of Newton W. Hall and Mary Jane Hall, afterwards Mary Jane Pollock, who did not sign that deed.

*Second*—The next question relates to the solicitor's fee allowed to the complainant below, the present appellee, Silas E. Seeley, and taxed as costs against all the parties in the case. We think that this fee was improperly taxed as costs. (*Habberton* v. *Habberton*, 156 Ill. 444; *Hartwell* v. *DeVault*, 159 id. 325; *Metheny* v. *Bohn*, 164 id. 495; *Dunn* v. *Berkshire*, 175 id. 243; *Gehrke* v. *Gehrke*, 190 id. 166).

In the first place, there is no evidence, properly presented by the record, as to the value of the services rendered by the solicitor of the complainant below. It is true that a paper is inserted in the record which states that, on the hearing of the cause on March 7, 1901, two attorneys testified that the sum of $500.00 was a reasonable fee for the services of said solicitor. But there is no evidence upon this subject embodied in the certificate of evidence, nor are there any facts in relation thereto recited in the decree of the court below. In *Davis Paint Co.* v. *Metzger Oil Co.* 188 Ill. 295, we said (p. 298): "Where, as here, no facts are found in the decree, and there is no certificate of evidence, there is nothing in the record to sustain the decree, and, hence, there is error which requires a reversal of the decree." In *Metheny* v. *Bohn*, *supra*, we also said (p. 497): "No evidence is preserved in the record showing what services the complainant's so-

licitors rendered or the value of such services.    *    *    *
The rule that the evidence to sustain an allowance of
this character must be preserved in the record has been
repeatedly stated by this court."

In the second place, the rights and interests of all the
parties do not appear to have been correctly set forth in
the bill as originally filed; as the bill was demurred to
several times, and several times amended, before the alle-
gations in regard to such interests were correctly made.
In *Metheny* v. *Bohn*, *supra*, we held that, under the statute,
by which the court is directed to apportion the fees when
the rights and interests of the parties are properly set
forth in the bill unless some defendant shall interpose a
good and substantial defense to the bill or petition, the
good and substantial defense which may be interposed,
and which will prevent the allowance of the fee, is a de-
fense of a good and substantial character.   Speaking of
this statute, we there said (p. 501):   "We think it should
be construed as meaning that a defense, valid and sub-
stantial in character, made in good faith and on reason-
able ground, should exempt a defendant from paying a
solicitor of his adversary, not for services rendered to
him, but for a hostile attack upon what he in good faith
believes to be his substantial right.   If the bill states
the rights and interests of the parties correctly, a de-
fense which is merely formal, frivolous or vexatious, or
which is not undertaken in good faith, would not be re-
garded as good or substantial.   The defense in this case
was of a good and substantial character and was not
undertaken without reasonable grounds, although it was
overcome by evidence on the part of complainant and
proved unsuccessful.   In such a case it would not be
equitable for the defendant to pay a part of a solicitor's
fee solely earned as his adversary."

In the case at bar, the defense based upon the alleged
validity of the foreign will, made in Nebraska, was held
to be good in the court below, but is here held to be bad.

It was, however, not formal, frivolous or vexatious, but was a defense of a substantial character.  The question as to the effect of the foreign will, when set up against the deed executed in Illinois, was a debatable question and not altogether free from doubt.  Hence, this is not a case where, under the statute, the solicitor, filing the bill of complaint for partition, can tax his fee as costs against all the parties; but, in view of the considerations already stated, each party should be allowed to pay only his own or her own solicitor's fees.

For the reasons above stated, the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*