Alfred L. Jones

v.

Minerva P. Young et al.

*Opinion filed June 19, 1907—Rehearing denied October 9, 1907.*

1. Judgments and decrees—*when decree as to solicitor's fees is interlocutory, only.* A partition decree which finds that the costs, "including a reasonable solicitor's fee, be apportioned among the parties," and that "upon the filing and confirmation of the commissioners' report the cause be referred to the master in chancery to hear proof and ascertain the costs of the proceeding, including reasonable solicitor's fees," is merely interlocutory as to the costs and solicitor's fees, and until the master's report concerning them is confirmed and their allowance made by the chancellor there is, as to such matters, no final decree.

2. Solicitor's fees—*when apportionment of fees in partition is inequitable.* Apportionment of complainant's solicitor's fees among the parties to a partition proceeding is inequitable where the proceeding was not amicable and there was a substantial contest growing out of an honest difference of opinion between the complainant and the defendants, and the counsel employed by them, as to the interests of the various parties and the best way to adjust them, and where, from the first, the parties were unable to agree upon a division of the estate or the value thereof.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. John L. Healy, Judge, presiding.

This is a proceeding in the circuit court of Cook county for the partition of real estate in that county. The only question here involved is whether the fees of complainant's solicitors should be apportioned among the parties and taxed as costs. The trial court allowed $4000 so taxed. The Appellate Court reversed the decree on this point and remanded the cause.

Florence Brayton Jones, wife of appellant, died intestate April 2, 1895, leaving no children, her only heirs being said husband and Sweet Brayton, her grandfather. The last

named died before the filing of the bill, leaving his two children, Minerva P. Young and William B. Brayton, his only heirs. During the pendency of the partition suit William B. Brayton died, leaving some of the appellees as his only heirs.

The record discloses that prior to the filing of the bill for partition on June 2, 1896, by appellant herein, there had been some contention between the parties as to several matters connected with the division of the property, and that counsel had been employed by the parties interested before the proceedings were started in court. On June 9, 1896, William B. Brayton and Minerva P. Young entered their appearance in these proceedings. June 17, 1896, the bill was amended in several minor particulars and also so as to claim on behalf of the complainant a homestead estate. July 1, 1896, the bill was again amended by adding a prayer for accounting of the rents and payments made by the various parties, appellant having been in possession of the city property and appellees at that time being in possession of the farm property. July 29, 1896, the answer of William B. Brayton and Mrs. Young was filed, admitting the allegations of the bill as to the interests of the parties, except as to complainant's right to homestead in certain of the property. Afterward the bill was amended for the third time, correcting certain descriptions of real estate, omitting ten acres and including a block of land, and admitting that Mrs. Young had a homestead in a part of the property. The matter was referred by the trial court to a master in chancery, who, after hearing evidence, made a report finding title substantially as set out in the bill as finally amended, and that a partition and division ought to be made as prayed. The chancellor substantially approved the report and entered a decree of partition, appointing three commissioners to divide the property. The decree further provided "that the costs of the proceeding, including a reasonable solicitor's fee, be apportioned among the parties according to their

several interests," and "upon the filing and confirmation of the commissioners' report that the cause be referred to a master in chancery to hear proof and ascertain the costs of the proceeding, including reasonable solicitor's fees." The decree also provided for an accounting. The commissioners' report was approved December 17, 1897. An accounting was found to have been made and satisfied, and the cause was thereupon referred to a master to ascertain and fix the fees for complainant's solicitors, and to apportion the same, together with the other costs, among the parties according to their interests. The master made a report recommending fees to complainant's solicitors, and July 19, 1905, the trial court entered a decree allowing complainant's solicitors $4000, apportioned among the parties to the suit as follows: Appellee Young $1629.03, the heirs of William B. Brayton $1307.50, and the balance to appellant. Appeal was prayed by appellees herein from this last decree to the Appellate Court, and that court held that these amounts were improperly charged to appellees.

KENNER S. BOREMAN, for appellant.

HOLDEN & BUZZELL, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant insists that the decree entered July 13, 1897, was final in character, not only as to fixing the title to the property in the partition proceedings, but as to the costs, including the fees of complainant's solicitors. It will be noted that that decree did not fix the solicitor's fees, but only provided that a reasonable solicitor's fee be apportioned among the parties according to their several interests, and that no final action was to be taken as to the amount of the fees until the confirmation of the commissioners' report, which was to be made thereafter. No substantial steps were taken as to the allowing of fees until long after the decree

of December 17, 1897. The decree was final only as to the rights and interests of the various parties in the premises in question. This appeal does not question those rights. That decree was merely interlocutory as to the costs, and there was no final decree as to solicitor's fees until the confirmation of the report of the master recommending them, and their allowance by the chancellor in the decree here appealed from, entered July 19, 1905. The following authorities fully sustain this conclusion: *Adamski* v. *Wieczorek*, *170* Ill. *373; Glos* v. *Clark, 199* id. *147; Gray* v. *Ames, 220* id. *251; Crowe* v. *Kennedy, 224* id. *526.* The case of *Lilly* v. *Shaw, 59* Ill. *72,* cited by appellant, in no way conflicts with this finding. There the decree had fixed and finally allowed solicitor's fees and was set aside after the term had gone by, the court attempting to change the amount of the fees. This case is in full harmony with the decisions cited above, as is *Allison* v. *Drake, 145* Ill. *500.*

It is further urged that the trial court's rulings, on the showing in this record, should have been sustained and complainant's solicitor's fees allowed under section 40 of chapter 106. (Hurd's Stat. 1905, p. 1497.) This statute is given in full, with a careful review of the authorities on the question, in *McMullen* v. *Reynolds, 209* Ill. *504,* and therefore it is unnecessary in this case to do more than set out briefly the facts in this record bearing on the question and apply the law as there laid down.

A study of the evidence here clearly discloses that these partition proceedings were not amicable. The testimony of William B. Brayton was taken before his death, and among other things he stated that appellant wanted said Brayton and appellee Young to take the town and farm property and give appellant the city property, and wanted them also to buy the appellant's dower rights; that they (Brayton and Young) wanted appellant to hold his dower rights in the property during his lifetime; that they had several meetings on this question at which no understanding was ar-

rived, but at their last meeting it was agreed to meet in the office of appellant's counsel on the following Wednesday, and that such meeting was not held because they learned that appellant had in the meantime started this proceeding. It is admitted that there was a dispute as to the question of dower before the starting of these proceedings, although it is claimed by appellant that he wanted his dower set off in fee so as to avoid future trouble between the parties. It is also admitted that there was a matter of accounting between them which was not adjusted before the suit was started. Complainant's solicitor, who was allowed fees by the chancellor, testified that there was a disagreement among the heirs; that "the parties were a good way apart as to their respective rights," and that he did his best to adjust matters without a hot contest but finally made up his mind that a suit was necessary; that after it was started he had many interviews with the attorneys for various of the appellees, getting nearer together at every interview but not sufficiently to warrant a settlement out of court. After the decree was entered to appoint commissioners, appellant recommended one commissioner and appellees another, and the record tends strongly to show that it was agreed that the two commissioners should recommend a third, and that one was so recommended; that after the third commissioner had examined the property and had expressed his views as to the values, appellant entered objections to the choosing of a third commissioner by the two other commissioners, and the court finally appointed another commissioner. There also appears to have been a wide difference of opinion among the parties as to the value of certain pieces of property.

Where the proceedings are plainly amicable and there is no substantial contest as to the rights and interests of any of the parties it would be injustice to all to encourage the employment of counsel by defendants. A contest, to warrant such employment, while not necessarily successful in its termination, should be of a substantial character, and not

merely formal, frivolous or vexatious. (*Bliss* v. *Seeley*, 191 Ill. 461; *Walker* v. *Tink*, 159 id. 323.) We do not wish to be understood as intimating that in this case appellant or his counsel were actuated by improper motives in claiming what they did for appellant. Apparently there was an honest difference of opinion, not only between the parties to the proceedings but between their counsel, as to the rights of the various owners and the best way to adjust them. But here, as in the case of *McMullen* v. *Reynolds, supra,* the property to be divided was valuable, as finally appraised amounting to $124,000. The parties from the first were unable to agree upon the division. Counsel were employed by appellees, long before these proceedings were begun, to protect their interests and to secure their just proportion of the properties. It would be inequitable on this record to require the defendants in the partition proceeding not only to pay their own counsel but a part of the fees of complainant's counsel. The facts in this case are very similar to those in *McMullen* v. *Reynolds, supra,* and we can see no good reason why the conclusion reached in that case should not apply with equal force here. See, also, *Hartwell* v. *DeVault,* 159 Ill. 325; *Gehrke* v. *Gehrke,* 190 id. 166; *Bliss* v. *Seeley, supra.*

We think the Appellate Court was right in holding that the decree of December 17, 1897, was not final as to the solicitor's fees, and that therefore the appeal was properly allowed from the decree of July 19, 1905, fixing the fees, and that the Appellate Court was also right, on the facts in this record, in refusing to allow a part of the fees of complainant's solicitors to be taxed against appellees.

The judgment of the Appellate Court will accordingly be affirmed.                    *Judgment affirmed.*