## FARGASON v. EDRINGTON.

1. BONA FIDE PURCHASER: *Creditor purchasing under trust deed.*

On the 16th of March, 1877, F. & Co. held a deed of trust executed to them by M. as a security for advances to be made, and under which they had advanced him $5000. He was indebted to them in the further sum of $7000 then due. On condition that he would execute to them his note for $16,000, with 10 per cent interest, due on the 15th of November, 1877, and his deed of trust to secure the same, they advanced to him the further sum of $4000 to pay for land, to be conveyed with other property in the new deed of trust, and canceled and surrendered the original deed. The land was sold under the second deed of trust, executed in compliance with these terms, and F. & Co. became the purchasers. *Held :* That they were purchasers for a valuable consideration and entitled to protection against an equity or trust of which they had no notice, at the time the second deed of trust was executed; and that the acceptance of a quit-claim deed from the trustee was not sufficient to charge them with such notice.

2. EVIDENCE: *Admissions of trustee.*

The admissions, or declarations of a trustee, affecting the title to the property conveyed to him by deed of trust, made at a time when he was not in the performance of any duty as trustee, are not admissible in evidence to charge the beneficiary of the trust with notice of a defect in the title.

3. BONA FIDE PURCHASER :

The vendee of a *bona fide* purchaser, stands in the attitude of his vendor, and is entitled to the same protection.

4. POSSESSION: *Of land under recorded deed.*

A deed to one in his own right is, when recorded, notice to all persons that his possession of the land it conveys, is also in his own right; and a purchaser from him is not required to make further inquiry as to how he holds.

APPEAL from *Mississippi* Circuit Court in Chancery.

T. P. McGOVERN, Special Judge.

*U. M. & G. B. Rose* for appellants.

There is not the slightest proof that appellants had any notice, actual or constructive, of Mrs. Edrington's rights. The burden of proof was upon appellees, who allege notice, the

Fargason v. Edrington.

rule being, that when notice is charged by the plaintiff, and the defence of innocent purchaser is set up, the plaintiff must prove the truth of his charge. *29 Ark., 568; 31 id., 89; 35 id., 100; 41 id., 294.*

Mortgagees are entitled to all the protection accorded to *bona fide* purchasers. *31 Ark., 85; 1 Jones on Mort., sec. 458; id., sec. 710.*

There is a conflict as to whether a person taking a mortgage only to secure a pre-existing debt, and not advancing any new consideration or changing his condition in any way, is entitled to the protection accorded an innocent purchaser. But in this case appellants advanced a new and valuable consideration, clearly bringing them within the rule. *1 Jones Mort., sec. 459; 52 N. Y., 142; 31 Ark., 634; 63 Ind., 576; S. C., 30 Am. Rep., 250.*

Being innocent purchasers, the rights of Fargason & Co. date back to the time of taking the mortgage, and are not impaired by any notice they may have subsequently received Their rights were vested. A purchaser at their foreclosure sale, though he knew all about the agreement between Matthews and Mrs. Edrington, would succeed to their rights, and would hold the property as an innocent purchaser. *1 Jones on Mort., sec., 458; 13 N. Y., 509; Wade on Notice, sec. 62.*

*H. M. McVeigh* also for appellants.

*O. P. Lyles* for Mrs. Edrington.

Fargason & Co. can in no aspect be viewed as innocent purchasers; they bought at a public sale and the rule *caveat emptor* applies.

They knew that the property was about to be sold at a public sale. They furnished Matthews the money with which to purchase at that public sale, with the agreement that the

$3949.02 money advanced and the antecedent debt should be secured on this land. They knew that it was the property of the estate. They knew that this very property had been assigned to the widow as dower. This they were bound to know, for it was a matter of record. (See deposition of J. T. Fargason, Tr).

They knew that she was in possession as doweress, and this is sufficient to put them on inquiry. See *Sisk v. Alman et al., 34 Ark. R., 391.*

They bought at a public sale and received only a quitclaim deed, under which they went into possession. This bare fact alone is sufficient to charge them with notice of all the equities claimed by Mrs. Edrington. See *Oliver v. Piat, 3d Howard U. S. R., 333; Vilo v. Rodriques, 12 Wall., U. S. R., 323; Dickerson v. Colgrove, 11 Wall., U. S. R., 578; May v. LeClaire, 11 Wall., U. S. R., 332.*

There is a conflict between the evidence of W. B. Edrington and J. T. Fargason in regard to notice to J. T. Fargason & Co. But all the surroundings go to show that J. T. Fargason & Co. had notice, and particularly.

The testimony shows that Dan Matthews, their agent and trustee, had notice. Notice to Dan Matthews was notice to Fargason & Co. *7 Wait's Act. and Def., pp. 372, 375; 3 id., 449, 451; id., 231, 316; 21 Ark., 22.*

We insist that J. T. Fargason & Co. stand in exactly the same position as though they had purchased under the Brooks, Neely & Co. mortgage, from the fact that they had furnished the money, and in effect sent John Matthews to make the purchase. This takes it out of the rule protecting mortgagees from all secret equities as laid down in *Jones on Mortgages, 458.*

J. T. Fargason & Co. did not in fact surrender or yield any right at the time of receiving the mortgage, and did not ex-

tend the time of payment of the debt, so far at least as the sixty-two acre tract was concerned, except the $3949.02. They only furnished the money to buy the land, and took the mortgage to secure the advance and the then existing debt, so they are not on that account innocent purchasers.

*E. F. Adams* for heirs and administrator, J. H. Edrington.

If John Matthews did purchase for Mrs. Edrington, and the proof shows he did, the sales under the M. S. Edrington decree, and the Brooks, Neely & Co. trust deed, did not disturb Mrs. Edrington's possession as doweress, and Fargason & Co. were bound to take notice thereof. *34 Ark., 391; 16 id., 340; id., 543; 37 id., 195; 47 Ark., 533.*

Possession of real estate, under an apparent claim of ownership, is notice to those who subsequently deal with the title. *Wade on Notice (1st ed.), secs. 273, 340.*

Dan Matthews, the agent and trustee of Fargason & Co., had notice, and this charged them with notice. *29 Ark., 99; 39 N. Y., 70; 21 Iowa, 217; 3 Head (Tenn.), 60; 11 Wall., 356; 4 Hump., 394; 4 Me., 20; Wade on Notice, secs. 672 to 690; 2 Hill, N. Y., 451.*

BATTLE, J. On the 12th day of June, 1874, James H. Edrington and his wife, Nancy A., executed a deed of trust and thereby mortgaged certain land to secure his indebtedness to Brooks, Neely & Co., of Memphis, Tenn. He died in 1874, and on March 12, 1877, the trustee appointed to execute the trust, after advertising the same, sold sixty-two acres of the land at public sale, pursuant to the authority vested in him as such trustee. John Matthews, paying for the land the sum of $3951.02, became the purchaser thereof and received a deed therefor on the same day. On March 16th, four days after, he conveyed this land and certain personal property to Dan

Matthews, as trustee, to secure an indebtedness of $16,000 he owed to J. T. Fargason & Co. John Matthews failed to pay this indebtedness when it became due, and on the 30th of May, 1879, Dan Matthews sold the land under the deed of trust executed to him, at public sale, and J. T. Fargason & Co. became the purchasers.

On the 5th of May, 1881, J. T. Fargason & Co. sold the land to W. P. Hale. On the 12th of the same month, Nancy A. Edrington filed a complaint in the Mississippi Circuit Court, asking a cancellation of the deed to Matthews, to J. T. Fargason & Co. and to Hale, and that the title to the same be vested in herself.

She alleges in her complaint that John Mathews purchased the land for her; that on the 11th of May, 1877, he executed a declaration of trust, acknowledging that he had purchased the land at her instance, and agreed to convey it to her upon the payment by her of $6400, with interest at twelve and a half per cent. per annum, saying that that was what he had to give for the land and the rate of interest he had to give to raise the money; that J. T. Fargason & Co. had notice of her rights when the deed of trust to secure them was executed; that the deed of trust to secure them had been paid off by Matthews, and that the sale under it was a fraudulent device to cheat her out of her equities; that Hale purchased with knowlelge of her rights; and that she was willing to pay Matthews whatever amount should be found due him on an account stated.

John Matthews answered, in effect, that he purchased the land on his own account, and not as agent for Mrs. Edrington; that he borrowed the money from J. T. Fargason & Co. to make the purchase, they exacting as a condition of the loan that he should convey the land in controversy, if he became the purchaser thereof, and other property, to a trustee to secure them in the payment of the sum advanced to purchase the

land, of $5191.05 before then advanced by them to him under a deed of trust executed by him on February 11, 1877, and of another debt of $7334.98 he owed them; that he accepted these terms, borrowed the money and made the purchase; that pursuant to his agreement he executed the deed of trust to secure the $16,000; that from kindness and good feeling for Mrs. Edrington he agreed to let her have the benefit of his purchase, as evidenced by the declaration of trust of May 11, 1877; that she, at the time, knew of the existence and record of the trust deed for $16,000; that at the time of the sale under the deed of trust made to secure J. T. Fargason & Co. there was due to them on the indebtedness secured thereby the sum of $13,659.03; that the purchase made by them was a fair and *bona fide* purchase, and that he was closed out because he could not pay out.

J. T. Fargason & Co. answered to the same effect as John Matthews; and further stated that they knew nothing of the declaration of trust until long after the trust deed to secure them in the payment of the $16,000 had been executed and recorded: and that they took this trust deed in good faith, with the understanding that John Matthews was the sole and absolute owner of the property, and without notice that plaintiff had any claim whatever upon it; and that they sold the land to W. P. Hale in good faith, on their own account and for their own exclusive use and benefit.

The administrator and heirs of J. H. Edrington, Mrs. Edrington's deceased husband, were on their motion made parties defendant, and filed an answer and cross-bill. They admit the allegations of the complaint, but allege that the plaintiff was the executor and Matthews her agent, and that neither of them could legally purchase at the sale of any part of the property of decedent's estate. That the purchase by them simply amounted to a redemption, and the land reverted back to the estate subject to the widow's right of dower. That

Matthews' advances in making the purchase have long since been repaid by way of rents and profits. That the estate of J. H. Edrington is hopelessly insolvent. The prayer was for an accounting, a cancellation of the conveyances between Fargason & Co. and Matthews and Hale, a sale of the property to pay the debts of the Edrington estate, and for general relief.

Fargason & Co. answered the cross-complaint, making the same denials and allegations as in the answer to the original complaint.

W. P. Hale answered, alleging that he had purchased all the property except certain lots specifically described, in good faith and without notice of any defect in the title, and that Fargason & Co., had conveyed the property to him by a warranty deed.

The court, after hearing the evidence, found " that the purchase of the land by John Matthews was a fraud upon the estate of James H. Edrington ; and that the benefit of said purchase inured in equity to the said estate ; and that John T. Fargason & Co., and the other holders were affected with notice at and before their several purchases, of the equities of said estate, and of Nancy A. Edrington. That John Matthews and John T. Fargason & Co. had been fully paid for the purchase money "; and set aside the conveyance to Matthews, and the conveyance of Matthews to J. T. Fargason & Co., and the sale of J. T. Fargason & Co. to Hale, and vested the property in the estate of J. H. Edrington, deceased, and referred the cause to a master to state an account. Mrs. Edrington and J. T. Fargason & Co. appealed.

The record in this case is voluminous and many questions are involved. But it is only necessary to decide one of these questions, and that is, were J. T. Fargason & Co. innocent purchasers ?

"A *bona fide* purchaser has been defined to be one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive, of any adverse rights, claims, interests, or equities of others in and to the property sold." *1 Perry on Trusts, sec. 239; Merritt v. The Northern Railroad Co., 12 Barb., 605; Sanders v. McAfee, 42 Ga., 250.*

**1. Bona Fide Purchaser:** Creditor purchasing under trust deed.

It is well settled that a mortgagee is a purchaser, and to the extent of his claim is entitled to protection as a *bona fide* purchaser, against all secret equities and trusts of which he had no notice. It was held by this court in *Gherson v. Pool, 31 Ark., 85*, that a creditor who makes advancements under the security of a deed of trust, in good faith, and without notice of a vendor's equitable lien for the purchase money, is entitled to the protection of an innocent purchaser. It necessarily follows that when a creditor makes advances, or extends the time of the payment of a pre-existing debt for a definite time, or surrenders a valuable security, on the condition that his debtor secures him in the payment of the advances and pre-existing debt by a deed of trust and the debtor in the performaece of the condition executes the deed of trust, the creditor is entitled to protection as a *bona fide* purchaser for a valuable consideration, against all claims, equities and trusts of which he had no notice. *1 Jones on Mortgages, secs. 458, 710, 459; 2 Lead. Cases in Equity, by White & Tudor, pp. 85, 86; Cook v. Parham, 63 Ala., 456; Thurman v. Stoddard, id., 336; Themes v. Rembert, id., 561; Gilchrist v. Gough, 63 Ind., 576; Port v. Embree, 54 Iowa, 14; Schumpert v. Dillard, 55 Miss., 348.*

On the 16th of March, 1877, J. T. Fargason & Co. held a deed of trust executed to them by John Matthews on the 16th of February, 1877, as a security for advances to be made to

him by them. They had advanced under this deed of trust the sum of $5191.05. He was indebted to them in the further sum of $7334.98, then due. On condition that he would execute to them his note for $16,000 and 10 per cent. per annum interest thereon from date, due and payable on the 15th of November next following, and his deed of trust to secure the same, they advanced to him the sum of $3951.02 to pay for the land purchased on the 12th of March and canceled and surrendered the deed of trust executed on the 16th of February. In compliance with these terms he executed his note and the $16,000 deed of trust. From these facts it is obvious they were purchasers for a valuable consideration.

But it is insisted by appellees that they were not *bona fide* purchasers without notice, because they say Dan Matthews, the trustee in the $16,000 deed of trust, knew that John Matthews bought the land in question, at the sale on the 12th of March, for Mrs. Edrington. The only evidence of the truth of this allegation is in the deposition of a witness who testified that he heard Dan Matthews say, before and after the sale, that he knew that John Matthews had bought the land for Mrs. Edrington. Is this competent evidence? It is not competent on the ground that Dan Matthews, in his capacity of trustee, was the agent of J. T. Fargason & Co. For at the time these declarations were made, he was not in the performance of any duty as trustee. The declarations and admissions of an agent, when made during the continuance of his agency and while he is in the lawful prosecution of the business of his agency are admissible against the principal. They are admissible in that case because they are a part of the *res gestæ* and explain the act of agency they accompany. It is only because they are verbal acts, and part of the *res gestæ* that they are admissible at all. Wherever what the agent did is admissible in evidence, there it is competent to prove what he said about the act while he was doing it, in

2. EVIDENCE: Admissions of trustee.

order to explain or show its quality; and it follows that all declarations or admissions of an agent made while he was not in the performance of an act of agency are not competent evidence, and are mere hearsay. *Byers v. Fowler, 14 Ark., 105; 1 Greenleaf's Evidence, sec. 113.*

Then, again, the admission of a naked trustee having no beneficial interest in the property conveyed to him, cannot be given in evidence to defeat his *cestui que trust.* It is his duty to protect the interest of his *cestui que trust,* and he will not be allowed to betray that interest or the confidence placed in him. Not having any beneficial interest, his admissions or declarations made while he was not in the discharge of any duty as trustee are mere hearsay. *1 Perry on Trusts, sec. 433; Graham v. Lockhart, 8 Ala. (N. S.), 26; Thompson v. Drake, 32 id. (N. S.), 99; Thomas v. Bowman, 29 Ill., 426; Thomas v. Bowman, 30 id., 84.*

3. BONA FIDE PURCHASER: Vendee of, protected.

It is insisted that J. T. Fargason & Co. purchased at public sale, and received only a quit-claim deed, and that this fact alone is sufficient to charge them with notice of all the equities of Mrs. Edrington. But the trust deed under which the land was sold to John Matthews and the $16,000 trust deed were warranty deeds. We have seen that J. T. Farguson & Co. were innocent purchasers for a valuable consideration, by reason of the transaction which resulted in the execution of the $16,000 trust deed, and of the execution thereof. The sale to them by the trustee in that deed, in the exercise of the authority vested in him, entitled them to the protection of innocent purchasers, notwithstanding they purchased at the sale under the deed of trust, with a notice of the claims of other parties. They are vendees of a *bona fide* purchaser, and standing in the attitude of their vendor, are entitled to the same protection. The conscience of a *bona fide* purchaser is clear, and he can transfer to another, although affected with notice at the time of the transfer, that which he

has and can honestly retain.   If this was not true the *jus dis-ponendi* would be clogged by a restraint of indefinite duration, and the *bona fide* purchaser would fail to receive that protec-to which he is entitled.    *Webster v. Van Steenburgh, 46 Barb., 211; Wood v. Chapin, 13 N. Y., 509; 2 Leading Cases in Equity, pp. 33, 34; 1 Jones on Mortgages, sec. 458.*

It is contended that John Matthews was in possession of the land when he executed the $16,000 trust deed, and that was notice to J. T. Fargason & Co. of whatever interest he had in the land in question, and that he held subject to the equities of Mrs. Edrington, if she had any.   It is true that Matthews was in possession, but it is also true that he purchased in his own name, and took the deed to himself in his own right and caused it to be recorded.   The circumstance of his being in possession undoubtedly had a tendency to excite inquiry in the minds of those contemplating a purchase, but the fact that he had placed the evidence of his right to occupy upon record, where it is accessible to the whole world, arrested inquiry at that point, and plainly informed every one that they might rest securely upon the fact that he held in his own right, and for no one else.   J. T. Fargason & Co. had a right to rest upon this fact, and were not required to make any further inquiry as to how he held; and it follows that the possession of Matthews was no notice of Mrs. Edrington's claim.   *Woods v. Farmere, 7 Watts., 385; Wade's Law of Notice (2d ed.), secs. 297, 298,* and cases cited; *Jones on Mortgages, sec. 600,* and cases.

4. POSSESSION: Of land under recorded deed.

There is no evidence that J. T. Fargason & Co. had notice of the claim and equities of Mrs. Edrington, or any one else, until long after the execution of the $16,000 trust deed.   But, on the contrary, John Matthews and Fargason testified that they had no such notice, and that they acted in good faith in taking the deed of trust made to secure them.   Except as stated, the title acquired by them is unquestioned.   This being true,

they and those holding under them are entitled to the protection of innocent purchasers.

The decree of the court below is therefore reversed, and a decree will be entered here dismissing the original and cross-complaints.