# FEDERAL LAND BANK OF BERKELEY
## v. PACE et ux.

No. 5596. Decided July 31, 1935. (48 P. [2d] 480.)

*Richard W. Young,* of Oakland, Cal., and *Melville & Melville,* of Salt Lake City, for appellant.

*O. A. Tangren,* of Delta, for respondents.

WOLFE, Justice.

This is an action to quiet title to 2.75 acres located in Millard county, Utah. On October 1, 1921, one Underhill and his wife mortgaged to the appellant 40 acres of land in Millard county, setting it out in the mortgage by metes and bounds. Contiguous to these 40 acres were 2.75 acres also owned at that time by Underhill, which acres were not included in the mortgage. This small piece had upon it certain buildings and improvements which the appellant, at the time it took the mortgage, claims it was led to believe were located on the 40 acres it was receiving as security for the Underhill note. On December 8, 1930, Underhill and his wife executed a deed to the 2.75-acre tract with the improvements thereon to the defendant and respondent herein, Leslie D. Pace. It is from the facts now to be recited that the contention of the parties arise. This deed was not recorded until March 3, 1932. Between December 8, 1930, and March 3, 1932, to wit, on April 7, 1931, plaintiff began foreclosure proceedings to foreclose the mortgage on the 40-acre tract described in its mortgage, filing on the same day a lis pendens covering this 40 acres. A little more than a month later, to wit, on May 30, 1931, it amended its complaint in its foreclosure suit alleging that the barn, house,

and other buildings really located on the 2.75-acre tract had been by Underhill represented as being on the 40-acre tract; that believing in said representations, and acting upon them, it was induced to make and did make the loan. It was further alleged that it was specifically agreed by Underhill, the mortgagor, that the buildings and improvements on the land on which they were situated should be included as a part of the security for the loan. The amended complaint sought to have an equitable mortgage declared on the 2.75 acres and the same foreclosed. A lis pendens covering the 2.75 acres was filed on the same day as the amended complaint was filed. The court in the foreclosure action upon the default of the defendants to that suit granted the prayer and decreed the mortgage to cover the 2.75 acres, and granted judgment foreclosing the mortgage as to the 40 acres and the 2.75 acres. The 40 acres together with the 2.75 acres were bid in by plaintiff at the foreclosure sale and sheriff's deed, pursuant to a certificate of sale, was delivered to plaintiff on May 3, 1932. Plaintiff has had possession of the property since said time.

The defendants in this suit were not defendants in the foreclosure suit, and as far as the record shows had no knowledge of the suit being filed to include the 2.75 acres or to have an equitable mortgage declared thereon. There is nothing in the record that shows that on December 8, 1930, when the present defendant Pace took a deed from Underhill to the said 2.75 acres, or before or after said date, the Paces had any notice that the plaintiff claimed any interest in the 2.75 acres. Likewise, there is nothing in the record which shows that the plaintiff at the time it commenced its foreclosure suit, or when it filed its amended complaint, or before judgment or sheriff's sale, had any notice of the claimed interest of these defendants in the 2.75 acres. At none of said times was the deed to Pace recorded, and the Paces were not occupying the property. We must believe that plaintiff would have joined the Paces in the foreclosure suit had it known of their interest.

This action was brought against the defendants, who were not parties to the foreclosure suit, to quiet title. The defendants, in a so-called cross-complaint, asked to have the title quieted in them and for damages from the plaintiff because of an alleged wrongful possession of the premises from the 3d day of May, 1932, to the date suit was brought. The court found in favor of the defendants and against the plaintiff, quieting the title in the defendants, Leslie D. and Geneva Pace, and gave judgment in favor of the defendants and against plaintiff for $190 for occupancy. During the progress of the trial the plaintiff introduced its decree of foreclosure of the 2.75 acres and the record of the proceedings leading up to it. The defendant Pace offered his deed from the Underhills to the 2.75 acres. Plaintiff objected to the offer, and the objection was overruled. Plaintiff assigns error in the admission of this deed. The ruling will be considered together with the other questions in the case, as a decision on all the assignments depends upon the same legal propositions.

Plaintiff contends that the decree in the foreclosure suit to which defendants were not parties was nevertheless binding upon them because they had not recorded their deed at the time the foreclosure proceedings were started. The plaintiff founds this contention upon section 104-55-3, R. S. Utah 1933. As that section is to be considered in this opinion, it is now quoted in full:

"No person holding a conveyance from or under the mortgagor of the property mortgaged, or having a lien thereon, which conveyance or lien does not appear of record in the proper office at the time of the commencement of the action, need be made a party to such action, and the judgment therein rendered, and the proceedings therein had, are as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action."

Plaintiff, claiming that the foreclosure decree was conclusive on these defendants, further contends that the court was in error in permitting the deed from the Underhills to defendant to be introduced. Even under plaintiff's theory

it would seem the deed was necessary, because it was incumbent upon plaintiff to show, under its own theory, that these defendants had a deed which was not recorded on the 20th day of May, 1931, when the amended complaint in the foreclosure suit was filed. Be that as it may, one of the main questions, the answer to which will be controlling on this point of evidence, is as to whether section 104-55-3 applies in the case of the foreclosure of a mortgage when it is necessary to first apply to a court of equity to have included in the mortgage land which was not actually included by the mortgagor. We shall later consider that question.

The most logical manner of analyzing the situation of the parties and their rights is to consider this case, first, as if there never had been any foreclosure proceedings. It is contended by the plaintiff that under section 78-1-6, R. S. Utah 1933, it would be ahead because at the time it took its original mortgage it should have had 2.75 acres more which was not included by the description, and that equity will recognize that it had this right and treat it throughout as if it had been included in the mortgage from the date of the mortgage, to wit, from October 1, 1921; that consequently plaintiff is in the same position as a person who actually had obtained a mortgage on the 2.75 acres although not recorded, while another party obtained a deed to the same land by the mortgagor which is not recorded. Section 78-1-6, supra, reads as follows:

"Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proof, acknowledgment, certification or record, and as to all other persons who have had actual notice."

Section 78-3-3, R. S. Utah 1933, reads as follows:

"Every conveyance of real estate hereafter made, which shall not be recorded as provided in this title, shall be void as against any subse-

quent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

These statutes, as cited from the Revised Statutes of 1933, were copied verbatim from the Compiled Laws of 1917 which were in effect at the times of all the transactions which took place during the history of this case.

There is no question but that a mortgage lien is included in the term "conveyance" as used in section 78-3-3, and that a mortgagee is a purchaser, and the law of priority of record, in its general principle, applies to mortgages as well as deeds. *Steffian* v. *Milmo Nat. Bank*, 69 Tex. 513, 6 S. W. 823; *Hoffman* v. *Blume*, 64 Tex. 334; *Fargason* v. *Edrington*, 49 Ark. 207, 4 S. W. 763; *Seevers* v. *Delashmutt*, 11 Iowa 174, 77 Am. Dec. 139. The position taken by the plaintiff is then as follows:

"I had a mortgage recognized in equity on 2.75 acres, which was recorded. You defendants had a deed given after that time which was not recorded. Since neither of us recorded our instruments, I, being prior in time, am prior in right."

In this case it is really unnecessary to decide which of two grantees or lienholders are prior in equity when neither had recorded his instrument, because in this case plaintiff never had anything to record until he obtained by court decree what he sought to obtain. His right, as we shall later see, was a right to come into equity for reformation of a mortgage, or, more fundamentally yet, for specific performance. This mere equity as distinguished from an equitable mortgage which he sought to have equity declare cannot prevail over a deed obtained but not recorded. The statute does not pretend to say who is prior between one claiming an equity and one who has a deed. Moreover, in this case, the defendants, who were subsequent in their deed to the time when it was claimed by plaintiff that its equity arose, recorded their deed on March 3, 1932, which was before anything which hinted of any right in the plaintiff was recorded. Therefore, were we to conclude that section 78-3-3, R. S.

1933, did fix priority in right between the holder of an equity and the holder of a subsequent deed, still the holder of the deed would be ahead under the statute because he has first recorded. Even if we accept the position the plaintiff takes, that in effect it should be treated in equity as if it had the mortgage, and give that theory its full intendment, we still have a case in which there is no recording of said mortgage. Consequently, if we treat the plaintiff as having had a mortgage in equity on the 2.75 acres, we have a case in which such mortgage must be void as against a defendant who was a subsequent purchaser in good faith and for a valuable consideration and who recorded his deed on March 3, 1932, before any mortgage or sheriff's deed to the 2.75 acres was recorded by the plaintiff. Thus stands the situation if we take into consideration the rights of the plaintiff as compared to the rights of the defendants without bringing into the case the foreclosure proceedings. How, then, do the foreclosure proceedings affect the situation? In order to determine this, it is first necessary to analyze the nature of what plaintiff calls an equitable mortgage. An equitable mortgage is a lien which equity impresses on the property, but in order to obtain this mortgage, plaintiff must resort to equity. Equity, if the claimant proves his claim, reforms the mortgage to include the additional land. There is a right to come into equity and have it so included, but in order to enforce this right against the defendants, the defendants would have had to have been made parties to that suit. The plaintiff proceeds on the assumption that section 104-55-3, R. S. Utah 1933, does not compel him to join as defendants in a suit to reform a mortgage or for specific performance those parties who have not their conveyance of record. In this he is in error. That section provides that no person holding a conveyance from or under the mortgagor of the property mortgaged, or having a lien thereon, which conveyance or lien does not appear of record in the proper office, need be made a party, but it does not go to the extent of saying that, where one is required to re-

sort to the courts in order to have a mortgage made, all parties interested in the land, in order to be bound by a decree in such case, must not be made parties. Section 104-55-3 has nothing to do with a situation where parties must resort to the courts in order to obtain the mortgage. The principle which applies in a case where a party must resort to the courts is the ancient principle that every person, in order to be precluded, must have his day in court. Defendants were not parties to the suit which sought to have included in the mortgage the 2.75 acres. The matter becomes quite simple when we see the real nature of the right which the plaintiff sought to enforce. It was really a right to compel the Underhills to specifically perform. Plaintiff says, in effect,

"You offered to mortgage to me this 2.75 acres on which the improvements were located because you told me that they were on the land which you were giving me as security, therefore, I come into equity to reform the mortgage you did give me to include these 2.75 acres which you should in addition have mortgaged to me, or in other words, to compel you to mortgage that 2.75 acres to me."

Certainly, a decree of specific performance would not be good against parties having an interest in the land who were not properly made parties in that action whether such action for specific performance is an action in rem or personam. It is not necessary at this time to determine the nature of the action because no service was had on defendants whether such action be an action in rem or personam. It is a simple case of plaintiff in a foreclosure action having obtained a decree against the Underhills but not against the defendants because the defendants were in no way made parties. Nor does section 78-1-6, R. S. Utah 1933, above quoted, in any way help the plaintiff. That section relates purely to notice. It gives no substantive rights in itself. Equity applies the equitable doctrine of protecting the subsequent bona fide purchaser in good faith without notice, but in order to determine whether there is notice it inquires into the question as to whether the subsequent purchaser had actual notice of

the rights of a prior mortgagee or grantee, or what in law would be equivalent to actual notice, or constructive notice, as laid down by section 78-1-6. Equity applies this latter statute in its determination of the equities. The statute itself gives no equities. In the instant case, the plaintiff gave only notice by record that he had a mortgage on 40 acres and not on the 2.75 acres; consequently, there is nothing on the record which could give notice to third persons of a mortgage in favor of plaintiff to the 2.75 acres, since there was nothing on the record of such mortgage; nor was there in existence such a mortgage, but only a right in equity, if any, to have a mortgage executed or declared on such property. This right in equity, as said before, could only be enforced against the defendants in case they were made parties to such suit in equity. They were not made such parties; consequently, they are not bound by the decree including the 2.75 acres in the mortgage on the 40 acres and foreclosing the mortgage on the total 42.75 acres.

The lower court was therefore not in error in admitting the deed from the Underhills to Pace in evidence, nor was it in error in arriving at its judgment that the foreclosure proceedings which included reformation was not binding on the Paces, nor in its judgment that the title should be quieted in the Paces.

There appears to be sufficient evidence to sustain the court's judgment of damages in the sum of $190.

The judgment of the lower court is therefore affirmed. Costs to respondents.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.