SOUTH SANPITCH COMPANY,
Plaintiff and Appellant,

v.

Daniel PACK; Margaret A. Gunterman; Action Title Company, Trustee; T.P. Family Partnership; Hoffbuher Redi–Mix Inc.; Willard M. Tucker; Phyllis O. Tucker; and D Land Title Company, Defendants and Respondents.

No. 880025–CA.

Court of Appeals of Utah.

Dec. 13, 1988.

Brent D. Young, Jerry L. Reynolds (argued), Provo, for plaintiff and appellant.

Richard K. Chamberlain, Tex R. Olsen (argued), Richfield, for respondent D Land Title.

Philip L. Foremaster, St. George, for T.P. Family Partnership and Willard Tucker.

Jackson Howard, Danielle Davis, Provo, for Norma Wanlass.

Mark Robinson, Provo, for Action Title Co.

Before BENCH, DAVIDSON and ORME, JJ.

## OPINION

ORME, Judge:

South Sanpitch Company appeals from the trial court's judgment insofar as it awarded no damages to South Sanpitch for the negligence of D Land Title Company. The trial court found D Land Title negligent, but ruled that no harm had resulted from D Land Title's delay in recording a partial reconveyance of real estate. South Sanpitch claims the trial court erred first, by finding that D Land Title's negligence did not cause South Sanpitch's title to be encumbered and, second, by failing to

award, as damages, the attorney fees it incurred in maintaining this quiet title action. We agree and reverse.

### FACTS

For purposes of this appeal, discussion of various transactions among the defendants can be omitted and the facts otherwise simplified.

Margaret Gunterman was the beneficiary under a trust deed encumbering a large tract of unimproved real estate located in Sanpete County. D Land Title was named as trustee of the trust deed. South Sanpitch completed its performance under a uniform real estate contract and became entitled to ownership of a ten-acre parcel which was part of the larger tract. Accordingly, on December 6, 1983, Gunterman requested D Land Title to execute a deed of partial reconveyance for the benefit of South Sanpitch. Within a few days, D Land Title executed the partial reconveyance and the parties do not dispute that D Land Title should have recorded the document promptly. Instead, an employee of D Land Title placed the deed on top of an office refrigerator and it was not discovered and recorded until May 29, 1984. Meanwhile, on April 9, Gunterman assigned to Daniel Pack her interest as beneficiary under the trust deed. The assignment document did not exclude from its scope the ten-acre parcel already reconveyed to South Sanpitch. Pack recorded his assignment on May 1, 1984.

In June, Action Title Company was substituted as trustee under the trust deed and Pack instituted nonjudicial foreclosure of the trust property, including the parcel purchased by South Sanpitch. South Sanpitch filed this action to quiet title in, and prevent Pack from foreclosing on, its parcel. South Sanpitch and Pack reached a stipulation quieting title to the parcel in South Sanpitch, and claims against the other defendants were resolved without trial as well.

A trial was held to determine the remaining issues, namely, whether South Sanpitch was injured by D Land Title's failure to promptly record the deed of partial reconveyance and whether attorney fees incurred by South Sanpitch to quiet its title were recoverable as an element of damages. At trial, South Sanpitch claimed that D Land Title's negligence in not recording the deed within a reasonable time permitted a cloud to be created on South Sanpitch's title. According to South Sanpitch, a cloud arose when Pack recorded his assignment of Gunterman's interest at a time when reconveyance of the South Sanpitch parcel did not appear of record. Thus, South Sanpitch argued that D Land Title should be held liable for the expenses incurred by South Sanpitch as a result of having to vindicate its title. The trial court rejected this argument and held that while D Land Title was negligent in not promptly recording the deed of reconveyance, South Sanpitch was not injured because any cloud on its title was cured by the belated recordation of the deed on May 29, 1984. Accordingly, the trial court denied South Sanpitch's claim for damages.

South Sanpitch's appeal places in issue two aspects of the trial court's decision: First, whether D Land Title's negligence caused actual harm to South Sanpitch, an issue which primarily turns on whether the partial reconveyance and the assignment are "conveyances" under the previous version of the Utah recording statute and, second, if South Sanpitch was harmed, whether it can recover attorney fees as damages.

### RECORDING AND CONVEYANCES

The trial court concluded that since the deed of partial reconveyance for South Sanpitch's benefit was executed and delivered first, the assignment was a nullity insofar as it purported to transfer a security interest in property already released from the encumbrance created by the trust deed. While at first glance this seems abundantly reasonable, the "race-notice" provisions of Utah's recording statute compel the opposite conclusion.

Utah Code Ann. § 57–3–3 (1986),[1] with our emphasis, provided as follows:

Every *conveyance* of real estate hereafter made, which shall not be recorded as provided in this title, shall be void as against *any subsequent purchaser* in good faith and for a valuable consideration *of the same real estate,* or any portion thereof, where his own conveyance shall be first duly recorded.

Under this provision, the partial reconveyance to South Sanpitch is void as to Pack, i.e., he retains an enforceable security interest in South Sanpitch's property, if each of these criteria is met: (1) the assignment to Pack is properly characterized a "conveyance"; (2) the partial reconveyance is properly characterized a "conveyance"; (3) Pack is deemed a "subsequent *purchaser* ... of the same real estate, or any portion thereof*"; and (4) Pack is a *good-faith* purchaser for *value.*

■ Although "[a]t common law the term 'conveyance' meant a transfer of title or of an estate in land," *Bybee v. Stuart,* 112 Utah 452, 189 P.2d 118, 123 (1948), a statutorily prescribed definition broadens the term as it was used in § 57–3–3 "to include not only the transfers of estates or interests in land, but also mortgages, incumbrances, etc." *Id.* (construing identically phrased, predecessor statute). The applicable version of the statutory language referred to in *Bybee,* Utah Code Ann. § 57–1–1 (1986),[2] with our emphasis, provided as follows:

The term "conveyance" as used in this title shall be construed to embrace every instrument in writing by which any real estate, *or interest in real estate,* is created, *aliened,* mortgaged, encumbered or *assigned,* except wills, and leases for a term not exceeding one year.

Under this provision, the assignment to Pack is clearly a "conveyance."

■ While a trustee's reconveyance is not referred to explicitly in § 57–1–1, a reconveyance serves to release a security interest in property and therefore to "alien," i.e., alienate, that interest. *See* Webster's Third New International Dictionary 53 (1986). Thus, the partial reconveyance is likewise a "conveyance" under the statute.

Construing the term "conveyance" as used in § 57–3–3 to include both assignments of the beneficial interest under a trust deed and trust deed reconveyances is fully consonant with a key provision of the trust deed statute, which provided in pertinent part as follows:

Any trust deed, substitution of trustee, *assignment of a beneficial interest under a trust deed,* notice of default, trustee's deed, *reconveyance of the trust property* and any instrument by which any trust deed is subordinated or waived as to priority, when acknowledged as provided by law, shall be entitled to be recorded, and shall, from the time of filing ... impart notice of the contents thereof to all persons....

Utah Code Ann. § 57–1–36 (1986) (emphasis added).[3]

■ Turning to the other pivotal terms in § 57–3–3, "subsequent purchaser ... of the same real estate" is not limited to purchasers of fee title, but is expansive enough to include an assignee, for value, of a mortgage or other lien in real estate. *Cf. Federal Land Bank v. Pace,* 87 Utah 156, 48 P.2d 480, 482 (1935) ("There is no question but that a mortgage lien is included in the term 'conveyance' as used in [the sim-

---

**1.** Effective July 1, 1988, the Legislature amended the section, apparently to avoid use of the misleading term "conveyance." *See* 1988 Utah Laws ch. 155, § 15 (codified in Utah Code Ann. § 57–3–3 (1988)). The rewritten section now refers to "[e]ach document" instead of "[e]very conveyance."

**2.** The 1988 amendment, *see* Note 1, *supra,* deleted the definition for "conveyance" and substituted a definition for "document." 1988 Utah Laws ch. 155, § 1 (codified in Utah Code Ann.

§ 57–1–1(2) (1988)) ("'Document' means every instrument in writing, including every conveyance, affecting, purporting to affect, describing, or otherwise concerning any right, title, or interest in real property, except wills and leases for a term not exceeding one year.").

**3.** The legislation amending the recording statute, *see* Notes 1 & 2, *supra,* also revised § 57–1–36. *See* 1988 Utah Laws ch. 155, § 5.

ilarly-worded predecessor of § 57–3–3], and that a mortgagee is a purchaser, and the law of priority of record, in its general principle, applies to mortgages as well as deeds."). Thus, Pack is a "subsequent purchaser" under the statute.

■ This brings us to the final issue posed by § 57–3–3, namely whether Pack was a purchaser, for value, without notice of the unrecorded deed of reconveyance to South Sanpitch. If he was, South Sanpitch's deed is void as to Pack, even after it is recorded, since Pack's interest was recorded first. *E.g., Kemp v. Zions First National Bank,* 24 Utah 2d 288, 470 P.2d 390 (1970). Of course, whether Pack actually paid value for the assignment or had actual or constructive notice of the unrecorded partial reconveyance are matters which could not be ascertained by simply reviewing the recorded documents. Accordingly, South Sanpitch's title was in fact clouded pending definitive determination of these facts, whether through quiet title action or otherwise.[4]

As a result of D Land Title's negligence, South Sanpitch's title to the ten-acre parcel was clouded and South Sanpitch reasonably commenced this action to clear its title, i.e., to undo the damage D Land Title's negligence had caused it. Had the deed of reconveyance been promptly recorded by D Land Title, South Sanpitch's title to the parcel would have appeared of record at the time of Gunterman's assignment to Pack. Accordingly, South Sanpitch's title would not have been clouded by the assignment and such legal action would not have been necessary.

### ATTORNEY FEES AS DAMAGES

South Sanpitch claims that a proper element of the damage it suffered as a result of D Land Title's negligence is the attorney fees it incurred in quieting title to its parcel.[5] In response, D Land Title offers up the doctrine that an award of attorney fees is not appropriate unless provided for by statute or contract. *See, e.g., B & R Supply Co. v. Bringhurst,* 28 Utah 2d 442, 503 P.2d 1216, 1217 (1972); *Blake v. Blake,* 17 Utah 2d 369, 412 P.2d 454, 456 (1966). However, this general rule is not without exception. For example, even where a contract does not provide for attorney fees in the event of litigation between the parties, fees can be recovered as damages for breach of contract in certain situations. *See, e.g., Pacific Coast Title Ins. Co. v. Hartford Accident & Indem. Co.,* 7 Utah 2d 377, 325 P.2d 906 (1958).[6] Likewise, it is settled that when the natural consequence of one's negligence is another's involvement in a dispute with a third party, attorney fees reasonably incurred in resolving the dispute are recoverable from the negligent party as an element of damages. *See, e.g., Western Community Bank v. Helmer,* 48 Wash.App. 694, 740 P.2d 359, 362 (1987); *Sizemore v. Swift,* 79 Or.App. 352,

---

**4.** From all that appears, Pack paid value for the assignment and had no notice of the partial reconveyance. South Sanpitch managed to clear its title through settlement, rather than because it was able to show Pack was not entitled to the protections of the recording statute.

**5.** Nothing in this opinion should be taken to mean that damages in cases like these are limited to attorney fees. For whatever reason, all South Sanpitch seeks to recover from D Land Title is attorney fees incurred in its quiet title action against Pack.

**6.** In the *Pacific Coast* case, defendant had issued a bond indemnifying plaintiff title company from any loss resulting from defaults by a builder, one of whose duties was to keep the property free of liens. 325 P.2d at 907. Noting that the "general rule" on recovering fees "applies to claims for attorney's fees within the action it-

self, and not to situations such as the instant one," *id.,* the Court then examined the rule for recovering damages for breach of contract and its emphasis on foreseeability. The Court concluded with this analysis:

[I]t could reasonably be foreseen that the natural and usual consequence of Cassady's failure to pay the laborers and materialmen would bring about the series of events which occurred: that liens would be filed and legal proceedings instituted to enforce them; that plaintiff Title Company, having the duty to keep the titles clear, would interpose defenses and attend to some disposition of the claims, which would require the services of attorneys....

325 P.2d at 908. Although damages for negligence and damages for breach of contract are different in certain conceptual respects, much the same analysis applies to the instant case as was employed in *Pacific Coast.*

719 P.2d 500, 504 (1986); *Occidental Underwriters of Hawaii, Ltd. v. American Sec. Bank,* 5 Haw.App. 431, 696 P.2d 852, 854 (1985), *reh'g granted,* 5 Haw.App. 683, 753 P.2d 253 (1985); *Elijah v. Fender,* 674 P.2d 946, 951 (Colo.1984); *Gray v. Don Miller Assocs.,* 35 Cal.3d 498, 198 Cal.Rptr. 551, 555, 674 P.2d 253, 257 (1984).

This exception to the general rule is commonly referred to as the "third-party tort rule." *See, e.g., Gray,* 198 Cal.Rptr. at 555, 674 P.2d at 257. *See also* Restatement (Second) of Torts § 914(2) (1979). Although discussion of the third-party tort rule is often couched in terms of *prior* litigation with third parties, *see, e.g.,* D. Dobbs, Remedies § 3.8 at 195 (1973),[7] and typically fees recoverable under this rule will be sought in subsequent litigation against the negligent party, bringing two distinct actions is not strictly necessary. *See, e.g., Prentice v. North Am. Title Guaranty Corp.,* 59 Cal.2d 618, 30 Cal. Rptr. 821, 823, 381 P.2d 645, 647 (1963) (where escrow holder's negligence necessitated a quiet title action against third parties by seller of land, resulting attorney fees are proper element of seller's damage, recoverable from the escrow holder in the same action).

Although South Sanpitch joined D Land Title and the so-called third parties in a single action, it secured relief against the other parties and cleared its title before pursuing its claim for fees against D Land Title. More importantly, South Sanpitch does not seek to recover attorney fees incurred in litigating against D Land Title, which would be recoverable, if at all, only under the general rule; South Sanpitch seeks only those fees incurred in litigation against others to undo the problem D Land Title negligently caused. Consequently, we hold that the third-party tort rule is applicable to this case and South Sanpitch

is entitled to recover appropriate attorney fees from D Land Title.

Of course, care must be taken in cases like this to ensure not only that the attorney fees are otherwise properly calculated, *see, e.g., Dixie State Bank v. Bracken,* 764 P.2d 985 (Utah 1988), but also that an allocation is made between recoverable fees incurred in litigation with third parties and non-recoverable fees incurred in pursuing the negligent defendant or expended on causes of action not proximately necessitated by that defendant's negligence.

In this case, D Land Title focused its resistance on avoiding the imposition of any liability for attorney fees and did not much concern itself with the separate question of the *amount* of recovery, assuming some recovery was in order. Thus, the attorney for South Sanpitch testified that $2300 was an appropriate, reasonable fee to be assessed against D Land Title. D Land Title did not object to this testimony, demand greater specificity, cross-examine to determine how the fee was arrived at, nor offer controverting testimony. From all that appears, $2300 was reasonably incurred by South Sanpitch as attorney fees properly allocated to resolving the quiet title action and therefore properly imposed on D Land Title.

Accordingly, we reverse the trial court's judgment as it concerns D Land Title and remand with instructions to enter judgment in the amount of $2300 against D Land Title and in favor of South Sanpitch.

BENCH and DAVIDSON, JJ., concur.

---

7. Dobbs discusses the rule under the heading "Fees incurred in prior litigation as a result of tort or breach of contract." D. Dobbs, Remedies § 3.8 at 195 (1973).